UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**
Forman Holt
365 West Passaic Street
Suite 400
Rochelle Park, NJ 07662
Telephone: (201) 857-7110
Facsimile: (201) 665-6650
Charles M. Forman, Esq. (CMF-8937)
Michael E. Holt, Esq. (MEH-8735)
*Proposed Counsel for the Debtors*

K&L Gates LLP
One Newark Center
1085 Raymond Boulevard, 10th Floor
Newark, NJ 07102
Telephone: (973) 848-4000
Facsimile: (973) 848-4001
Daniel M. Eliades, Esq. (DME-6203)
David S. Catuogno, Esq (DSC-1397)
William Waldman, Esq. (WLW-1452)
Caitlin C. Conklin, Esq. (CCC-5117)
*Proposed Special Counsel for the Debtors*

| | |
|---|---|
| In re:<br><br>Supor Properties Enterprises LLC, *et al.*[1],<br><br>                   Debtors. | Case No. 24-13427 (SLM)<br>Judge: Stacey L. Meisel<br>Chapter 11<br><br>(Joint Administration Requested) |

## DECLARATION OF JOSEPH SUPOR III

I, Joseph Supor III, of full age, hereby certifies and declares pursuant to Title 28 of the

United States Code, Section 1746, as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Supor Properties Enterprises LLC (5580); J Supor 136-1 Realty LLC (3205); Supor-172 Realty LLC (EIN No. 5662); Supor Properties Breiderhoft LLC (7258); Supor Properties Devon LLC (6357); Shore Properties Associates North LLC (6707); Supor Properties 600 Urban Renewal, LLC (8604); JS Realty Properties, LLC (2497); and Supor Properties Harrison Avenue, LLC (1728).

1.      I directly or indirectly own and/or control the debtors in these proceedings: (i) Supor Properties Enterprises LLC; (ii) J Supor 136-1 Realty LLC; (iii) Supor-172 Realty LLC; (iv) Supor Properties Breiderhoft LLC; (v) Supor Properties Devon LLC; (vi) Shore Properties Associates North LLC; (vii) Supor Properties 600 Urban Renewal, LLC; (viii) JS Realty Properties, LLC; and (ix) Supor Properties Harrison Avenue LLC.  The forgoing entities are each individually referred to as a "Debtor" and collectively as the "Debtors".  The Debtors each own commercial real estate as identified below.

2.      I make this Declaration based on my personal knowledge, a review of records of the Debtors and of other entities that I own and/or control that are referenced herein, a review of documents publicly filed, and information available through employees and/or representatives of the Debtors and/or my personal representatives.

3.      On April 2, 2024 ("Petition Date"), Debtors each filed a voluntary petition for relief pursuant to chapter 11 of the United States Bankruptcy Code. Since the Petition Date, Debtors have remained in possession of their assets and have continued management of their properties, businesses, and affairs.

**A.      General Description and Outlook**

4.      I (i) own or control entities ("Prop Co's")[2] that own commercial real estate; (ii) own or control entities ("Hold Co's") that own the Prop Co's; and (iii) own or control entities ("Op Co's") that operate from real estate owned by certain of the Prop Co's.[3]

---

[2] The Debtors are each Prop Co's.

[3] Supor Trucking LLC, Supor Crane & Rigging LLC and/or J. Supor & Son Trucking & Rigging Co. are examples of Prop Co's that I own or control. These entities trace their roots to 1960, when my father started the business that became a leading resource for heavy transportation, moving, rigging, and storage of industrial goods and materials. None of these Op Co's operate from the real estate owned by the Debtors and their operations are not impacted by these bankruptcy cases.

5.       The Debtors are each Prop Co's. These bankruptcy proceedings were filed to, among other things, provide Debtors a forum to resolve disputes with their secured lender and implement a process to market all or some of their properties, with the support of their secured lender.

6.       I believe that the combined fair market value of the Debtors' real estate far exceeds the liens which encumber those properties. I also believe that transactions involving all or some of the Debtors' real estate will result in full payment of all allowed secured and unsecured claims. I do not believe that the operations of any Op Co will be adversely impacted by these bankruptcy cases.

7.       This Court recently confirmed the Plan of Reorganization or Liquidation in the matter of Supor Properties Bergen Avenue LLC, Case No. 23-15758 (SLM) (the "Supor Bergen Plan"). *See* ECF No 189. Supor Properties Bergen Avenue LLC is a Prop Co affiliate of the Debtors. Supor Properties Bergen Avenue LLC has received a "Qualifying Bid" for an "Exit Transaction" (both as defined in the Supor Bergen Plan). I anticipate that a "Sale Leaseback Transaction" (as defined in the Supor Bergen Plan) will close shortly and yield more than enough funds to satisfy allowed claims against Supor Properties Bergen Avenue LLC. I expect a similar successful result in each of these bankruptcy cases.

**B.       The Debtors' Ownership Structures**

8.       Supor Properties Enterprises LLC.  Debtor, Supor Properties Enterprises LLC ("Supor Enterprises") is a Delaware limited liability company formed on March 20, 2017. The sole member of Supor Enterprises is S&B Realty Partnership. S&B Realty Partnership is a New Jersey general partnership created on December 1, 1982.  The partners of S&B Realty Partnership are (i) the Marital Trust under the Last Will and Testament of Joseph Supor, Jr.

Dated September 13, 2002, as Amended by First Codicil Dated June 14, 2007, the ("Marital Trust"), which owns 99% of the partnership interests, and (ii) Joseph Supor III, who owns 1% of the partnership interests. I am the trustee of the Marital Trust and a beneficiary thereof.

9.      J Supor 136-1 Realty LLC. Debtor, J Supor 136-1 Realty LLC ("Supor 136") is a Delaware limited liability company formed on August 8, 2017. The sole member of Supor 136 is J. Supor 136-1 Limited Liability Company.  I am the sole member of J. Supor 136-1 Limited Liability Company.

10.      Supor-172 Realty LLC. Debtor, Supor-172 Realty LLC ("Supor 172") is a Delaware limited liability company formed on July 12, 2017. The sole member of Supor 172 is Supor-172 LLC.  I am the sole member of Supor-172 LLC.

11.      Supor Properties Breiderhoft LLC. Debtor, Supor Properties Breiderhoft LLC ("Supor Breiderhoft") is a New Jersey limited liability company formed on November 13, 2020. The sole member of Supor Breiderhoft is Supor Properties Breiderhoft Holding LLC.  I am the sole member of Supor Properties Breiderhoft Holding LLC.

12.      Supor Properties Devon LLC. Debtor, Supor Properties Devon LLC ("Supor Devon") is a New Jersey limited liability company formed on November 13, 2020. The sole member of Supor Devon is Supor Properties Devon Holding LLC.  I am the sole member of Supor Properties Devon Holding LLC.

13.      Shore Properties Associates North LLC. Debtor, Shore Properties Associates North LLC ("Shore Properties") is a New Jersey limited liability company formed on August 18, 2020. The sole member of Shore Properties is Shore Properties Associates North Holding LLC. I am the sole member of Shore Properties Associates North Holding LLC.

14.      Supor Properties 600 Urban Renewal, LLC. Debtor, Supor Properties 600

Urban Renewal, LLC ("Supor 600") is a New Jersey limited liability company formed on July 18, 2019. The sole member of Supor 600 is Supor Properties 600 UR Holding LLC.  I am the sole member of Supor Properties 600 UR Holding LLC.

15.    JS Realty Properties, LLC.  Debtor, JS Realty Properties, LLC ("JS Realty") is a Delaware limited liability company formed on May 7, 2020. JL Realty Properties LLC owns 100% of the membership interests in JS Realty. I own 90% of the membership interests in JS Realty and The Supor Family Grantor Trust owns 10% of the membership interests in JL Realty Properties LLC.

16.    Supor Properties Harrison Avenue LLC. Debtor, Supor Properties Harrison Avenue LLC ("Supor Harrison Avenue") is a New Jersey limited liability company formed on December 28, 2020. The sole member of Supor Harrison Avenue is Supor Properties Harrison Avenue Holding LLC.  The Marital Trust is the sole member of Supor Properties Harrison Avenue Holding LLC. I am the trustee of the Marital Trust and a beneficiary thereof.

**C.    The Debtors' Real Estate**

17.    The RDA Properties. Certain of the Debtors own[4] real property (collectively, the "RDA Properties") consisting of:

(i)    1000 Frank E Rodgers Boulevard, Harrison NJ (lot 5.02 in block 151, lot 17.02 in block 137 and lot 1.02 in block 149) ("FER 1 Property"), owned by Supor Enterprises;

(ii)    1000 Frank E Rodgers Boulevard, Harrison NJ (lot 1.07 in block 136) ("FER 2 Property"), owned by Supor 136;

(iii)    1000 Frank E Rodgers Boulevard, Harrison NJ (lot 1 in block 172) ("FER 3 Property" and together with FER 1 Property and FER 2 Property, the "FER Property"), owned by Supor 172; and

(iv)    600 Guyon Drive, Harrison NJ (lot 16.01 in block 150) (the "600 Guyon Property"), owned by Supor 600.

18.    The RDA Properties at 1000 Frank E Rodgers Boulevard, Harrison NJ are contiguous parcels of unimproved and vacant land, together comprising approximately 9.85 acres, abutting the Red Bull Arena.

19.    1000 Frank E Rodgers Boulevard, Harrison NJ (lot 1.07 in block 136) is subject to a Lease Agreement between Supor 136, as Landlord, and JS Realty, as Tenant, dated as of December 31, 2020 (the "Supor 136 Master Lease"). The Supor 136 Master Lease is scheduled to terminate on December 31, 2024.

20.    1000 Frank E Rodgers Boulevard, Harrison NJ (lot 1 in block 172) is subject to a Lease Agreement between Supor 172, as Landlord, and J. Supor & Sons Trucking & Rigging Co., Inc., as Tenant, dated as of December 31, 2020 (the "Supor 172 Master Lease"). The Supor 172 Master Lease is scheduled to terminate on December 31, 2024.

21.    Certain of the RDA Properties are subject of a Parking Facility Management Agreement dated October 1, 2015 between S&B Realty (the parent entity of Supor Enterprises), and M&J Comprelli, LLC to operate a parking facility for daily commuters into New York and for Red Bulls games.

22.    The property at 600 Guyon Drive, Harrison NJ consists of approximately 3 acres of land which is improved with a 50,000 square foot warehouse and office space referred to as the "Panasonic Building." This property is the subject of a Lease Agreement dated October 13, 2021, between Supor 600 and Ideanomics, Inc. Ideanomics Inc. has not paid rent since March 2023 and is in default of the lease. I have asked my counsel to commence collection action against Ideanomics, Inc.

---

[4] The reference to ownership is subject to the DILFs (defined below).

23.    The RDA Properties are the subject of an approved Redevelopment Agreement with the Town of Harrison (the "<u>Harrison RDA</u>") which grants the owners rights to redevelop the RDA Properties and construct 1500 residential units, a 200-room hotel, 151,960 square feet of retail space, 1,000,000 square feet of office space and 4,570 parking spaces.

24.    The following are renderings of a potential development of the RDA Properties:















25.     The RDA Properties are unique, extremely valuable, and have the potential to positively transform the Town of Harrison.  I have a long-standing relationship with the Town of Harrison and the Harrison Redevelopment Authority and hope to see the RDA Properties developed to the maximum benefit of all interested parties.

26.     <u>The Non-RDA Properties</u>. Certain of the Debtors own[5] real property (collectively, the "<u>Non-RDA Properties</u>") consisting of:

(i)     12 Breiderhoft Road, Kearny, NJ (lot 8.02 in block 252), owned by Supor Breiderhoft (the "<u>Breiderhoft Property</u>");

---

[5] The reference to ownership is subject to the DILFs (defined below).

(ii)    201 Devon Terrace, Kearny, NJ (lot 4.02 in block 252), owned by Supor Devon, (the "Devon Property");

(iii)    401 Supor Blvd a/k/a part of 500 Supor Blvd a/k/a 608 Supor Blvd, Harrison NJ (lot 1.02 in block 222), owned by JS Realty, (the "JS Realty Property");

(iv)    751 Harrison Avenue, Harrison, NJ (lot 9 in block 197), owned by Supor Harrison Avenue, (the "Supor Harrison Property"); and

(v)    94 Mantoloking Road, Brick, NJ (lots 7, 8 and 9 in block 68), owned by Shore Properties, (the "Shore Property").

27.    The Breiterhoft Property and Devon Property. The Breiderhoft Property is an industrial property consisting of 50,234 square feet located on a 3.91 acre site in Kearny, New Jersey. The Devon Property is a parcel of 4.91 acres of unimproved vacant land contiguous to the Breiderhoft Property.

28.    The Breiderhoft Property is subject to a Lease Agreement between Supor Breiderhoft, as Landlord, and JS Realty, as Tenant, dated as of May 2021 (the "Supor Breiderhoft Master Lease"). The Supor Breiderhoft Master Lease is scheduled to terminate in May, 2026. The Devon Property is subject to a Lease Agreement between Supor Devon, as Landlord, and JS Realty, as Tenant, dated as of December 31, 2021 (the "Devon Master Lease"). The Devon Master Lease is scheduled to terminate on December 31, 2025.

29.    The Breiderhoft Property is also the subject of (i) a lease dated April 2022 between Stalwart Productions LLC and Supor Realty LLC, as amended, and (ii) a Sublease Agreement between I.B. Abel, Inc. and J. Supor Realty LLC dated August 16, 2021.

30.    The sole tenant at the Devon Property is Montana Construction Corp. Inc. There is no written lease for this tenant.

31.    The JS Realty Property consists of approximately 1 acre of land improved with a 70,000 Square foot building used for office and studio space (the "Red Brick Building"). The Red Brick Building is the subject of a lease for the third floor of the premises dated July 14, 2022 between J. Supor Realty LLC and Skanska Traylor PNB Joint Venture. The Red Brick Building is also subject to an Amended and Restated Lease Agreement dated as of May 15, 2020 for 7,800 of office space between J. S Realty Properties LLC and Machinery Values, Inc., on a month to-month basis.

32.    The Supor Harrison Property is improved with a 2,985 square foot retail building.  The tenant at Super Harrison Property is Devs Foods 2 LLC, on a month-to-month basis, which operates a Burger King restaurant at this property. Supor Properties Harrison Avenue and Devs Foods 2 LLC are in discussions concerning a new lease for the Supor Harrison Property.

33.    The Shore Property consists of approximately 3.17 acres of vacant land, improved with a cell tower owned by Crown Castle Towers 09, LLC ("Crown Castle"). When this property was purchased, it was my understanding that a lease was in place with Crown Castle; however, that lease was never provided to me. It is my understanding that lease has expired, and Crown Castle is a month-to-month tenant at the property. Shore Properties has attempted to negotiate a new lease with Crown Castle but has not been successful to date.  In addition, the following parties utilize this property pursuant to unwritten occupancy agreements: Cool Concessions LLC; Newline Construction LLC; R. Kremer & Son Marine Contractors LLC; Michael Sonta; Biancella Enterprises, Inc.; Dan Nuse, Inc.; and WFD, Inv.

34.    The RDA Properties and Non-RDA Properties are each a "Debtor Property" and are collectively, the "Debtor Properties".

35.     Rents scheduled to be received from tenants/occupants of the Debtor Properties after the Petition Date are detailed in the cash collateral motion filed by Debtors.

**D.     Insurance**

36.     The Debtor Properties are subject to a master insurance policy between J. Supor & Sons Trucking and Rigging Co., Inc. and The Travelers Company, Inc. for the policy period of October 1, 2023, to October 1, 2024 (the "Master Insurance Policy"). The Master Insurance Policy provides comprehensive insurance coverage for the Debtors and related entities for a variety of risks including property and casualty coverage relative to the Debtor Properties. The premiums for the Master Insurance Policy are paid by J. Supor & Sons Trucking and Rigging Co., Inc., a non-debtor affiliate of the Debtors. The allocated portion of the insurance premium is accounted for by each Debtor as an intercompany debt to J. Supor & Sons Trucking and Rigging Co., Inc. The Debtors' cash collateral budgets include each Debtor's proportionate share of the insurance coverage.

**E.     Relevant Loan Documents**

37.     Attached at Schedule A of the Restructuring Support Agreement**,** which is attached hereto at **Exhibit "A"**, is a list of loan agreements, promissory notes, guaranties, security agreements, mortgages, forbearance agreements, and related documents (collectively, the "Loan Documents") evidencing a certain mortgage loan (the "Mortgage Loan") and a certain mezzanine loan (the "Mezzanine Loan") between:

(i)     1000 Frank E. Rodgers 1, LLC ("FER 1 Lender") and 1000 Frank E. Rodgers 2, LLC ("FER 2 Lender" and together with FER-1 Lender collectively, the "Lenders" and each such entity, a "Lender");

(ii)     Debtors;

(iii)    Joseph Supor III, individually; J. Supor & Son Trucking & Rigging Co. Inc.; and Subel Corporation D/B/A Harrison Warehousing Co. – (collectively, the "Guarantors" and each a "Guarantor"); and/or

(iv)    Supor Properties Boonton Holding LLC; Supor Properties Boonton DE; J. Supor Realty LLC; Joseph Supor III as Trustee under the Marital Trust under the Last Will and Testament of Joseph Supor, Jr., dated September 13, 2002; Supor Manor Realty LLC, and the Estate of Roseann Supor (collectively, the "Pledgors" and each a "Pledgor).

## F.    Factors That Precipitated the Debtors' Chapter 11 Filings

### 1.    The Foreclosure Actions

38.    On or about January 10, 2023, FER 1 Lender filed a complaint in foreclosure seeking, *inter alia,* foreclosure of the Debtor Properties in the Superior Court of New Jersey Chancery Division under Docket No. F-000308-23.

39.    On or about April 12, 2023, FER 1 Lender, FER 2 Lender, Debtors and Guarantors entered into a Forbearance Agreement.  Pursuant to the Forbearance Agreement, on or about April 12, 2023, Debtors and Guarantors also entered into an Agreement Regarding DIL Documents with FER 1 Lender, wherein, *inter alia,* Deeds in Lieu of Foreclosure for the Debtor Properties were given to FER Lender 1 to hold in escrow pending certain events.

40.    Also, pursuant to the Forbearance Agreement, on or about April 12, 2023, FER 1 Lender and Pledgors entered into certain Ownership Interest Pledge and Security Agreements whereby Pledgors pledged to FER 1 Lender their ownership interests in J. Supor Realty Mezz LLC, Supor Properties Boonton LLC, Supor Manor Realty Mezz LLC, Supor Properties-400 Limited Liability Company, and Supor Family, L.L.C., which entities own or control property other than the Debtor Properties (the "UCC Properties").

41.     On or about November 30, 2023, FER 1 Lender served a Notice of Sale scheduling a sale pursuant to the Uniform Commercial Code of the ownership interest of the Pledgors' interests in J. Supor Realty Mezz LLC, Supor Properties Boonton LLC, Supor Manor Realty Mezz LLC, Supor Properties-400 Limited Liability Company, and Supor Family, L.L.C. which own or control the UCC Properties for January 17, 2024. Such sale has been adjourned several times and the current scheduled sale date is no sooner than tomorrow, April 3, 2024.

### 2.     Recording of the Deeds in Lieu

42.     Between January 26 and 31, 2024, FER 1 Lender caused to be recorded the Deeds in Lieu of Foreclosure (collectively, the "DILF's") for the following Debtor Properties to single purpose entities owned or controlled by FER 1 Lender:[6]

1. FER Property 1 recorded with the Hudson County Register of Deeds on January 29, 2024, as Instrument 20240129010006630 for stated consideration of $19,000,000 to 1000 Frank E. Rodgers Blvd Owner LLC;

2. FER Property 2 recorded with the Hudson County Register of Deeds on January 29, 2024, as Instrument 20240129010006640 for stated consideration of $500,000 to 1000 Frank E. Rodgers Blvd Owner LLC;

3. FER Property 3 recorded with the Hudson County Register of Deeds on January 29, 2024, as Instrument 20240129010006650 for stated consideration of $5,500,000 to 1000 Frank E. Rodgers Blvd Owner LLC;

4. Breiderhoft Property recorded with the Hudson County Register of Deeds on January 26, 2024, as Instrument 20240126010006280 for stated consideration of $10,500,000 to 12 Breiderhoft Rd Owner LLC;

5. Devon Property recorded with the Hudson County Register of Deeds on January 29, 2024, as Instrument 20240129010006660 for stated consideration of $2,500,000 to 201 Devon Terr Owner LLC ;

6. Guyon Property recorded with the Hudson County Register of Deeds on January 31, 2024, as Instrument 20240131010007310 for stated consideration of $10,000,000 to 401 Supor Blvd Owner LLC; and

---

[6] The holders of the DILFs are 1000 Frank E. Rodgers Blvd Owner LLC; 12 Breiderhoft Rd Owner LLC; 201 Devon Terr Owner LLC; 401 Supor Blvd Owner LLC; and 600 Guyon Drive Owner LLC (collectively, the "DILF Holders" and each such entity, a "DILF Holder").

7. 401 Supor Boulevard Property recorded with the Hudson County Register of Deeds on January 29, 2024, as Instrument 20240125010005970 for stated consideration of $12,500,000 to 600 Guyon Drive Owner LLC .

43.    The Debtors contend, among other things, that: (i) the fair market value of the Debtor Properties exceeds the outstanding amounts due Lenders and far exceeds the consideration reflected in the DILFs, and (ii) the transfers of Debtor Properties subject to the DILFs are subject to avoidance under applicable law ("Debtor Avoidance Claims").

44.    The Parties have negotiated resolution of the Debtor Avoidance Claims and certain transactions including a sale of some or all the Debtor Properties on the terms set forth in the Restructuring Support Agreement (*defined below*).

**3.    The ADR Joint Ventures**

45.    Prior to May of 2023, American Dream Resorts ("ADR"), through its agent(s), principal(s) and representative(s) Joesph Gentile Sr. and Joseph Gentile, Jr. approached me regarding a proposed joint venture relative to certain Debtor Properties and other real estate owned by non-debtor Prop Co's (collectively, the "Supor JV Properties").

46.    In particular, ADR proposed a joint venture whereby it would contribute knowledge, experience and relationships to refinance the Debtor Properties and others to satisfy all amounts due to the Lenders (the "Madison Indebtedness") plus a significant return to owners of the properties.

47.    To accomplish the proposed joint venture, ADR and the owners of the Supor JV Properties (including all Debtors owning RDA Properties) would enter into an operating agreement to create a new entity to be jointly and equally owned by ADR and the respective owners of the Supor JV Parties (the "Debtor/Supor Related Entity"). The applicable Debtor/Supor Related Entity would contribute a deed to the real property owned by it to the new

joint venture entity. It was my understanding that the contributed deeds would not be recorded unless and until there was a closing of an acceptable re-financing transaction which satisfied the Madison Indebtedness.

48.    On May 16, 2023, ADR entered into Operating Agreements with Debtors: (i) Supor Enterprises; (ii) Supor 136; (iii) Supor 172; (iv) Supor 600; and (v) JS Realty.[7] The operating agreements between ADR and the above-listed entities are each an "Operating Agreement" and collectively referred to as the "Operating Agreements".

49.    Pursuant to the Operating Agreements, ADR specifically agreed *"to obtain, replace, modify, refinance and effectuate the presently defaulted Madison Collateralized and encumbering mortgages and liens . . ."*

50.    Pursuant to the Operating Agreements, each Debtor/Supor Related Entity executed the deed to the applicable Supor JV Property, which deeds were not be recorded unless and until there was a closing of an acceptable re-financing transaction which satisfied the Madison Indebtedness. On June 5, 2023, ADR, or representatives of ADR at ADR's direction, unlawfully recorded the contributed deed to 310-314 Manor Avenue, Harrison, New Jersey (the "Manor Avenue Property") purporting to transfer fee ownership of record to a joint venture entity for $0.

51.    ADR defaulted under the Operating Agreements by, among other things, (i) failing to *obtain, replace, modify, refinance and effectuate the presently defaulted Madison Collateralized and encumbering mortgages and liens*; (ii) failing to provide information as required and requested; (iii) recording the deed to the Manor Avenue Property; and (iv) failing to pay rent or use and occupancy related to its occupancy of certain Supor JV Properties. In the

---

[7]  ADR also executed operating agreements with non-debtors Supor Family LLC, Supor Properties-400 Limited Liability Company and the Marital Trust.

time following the execution of the Operating Agreements, ADR did not come forward with even one single refinancing proposal, nor did it identify any specific possible proposal(s) or potential refinance lender. During this time, the amount of the Madison Indebtedness ballooned by over $12 million.

52.    On January 2, 2024, I sent ADR a formal letter ("Demand Letter") demanding that ADR identify, among other things, all actions undertaken by ADR in connection with its obligation to seek and obtain acceptable refinancing to satisfy all obligations due to Lenders. ADR did not respond to, or even acknowledge, the Demand Letter at all.

53.    On February 15, 2024, I directed K&L Gates LLP ("K&L Gates"), on behalf of the Debtor/Related Entities, to provide notice of certain specified ADR defaults under the Operating Agreements and further provided formal notice of the termination of the Operating Agreements executed by Debtors Supor Enterprises, Supor 136, Supor 172, and Supor 600 and other Supor Related Entities (the "Initial Termination Notice").

54    On March 22, 2024, I directed K&L Gates, on behalf of Debtor JS Realty and non-debtor Supor Properties-400 Limited Liability Company, to provide notice of specified ADR defaults and further provided formal notice of the termination of the Operating Agreements executed by those entities (the "Supplemental Termination Notice" and, together with the Initial Termination Notice, the "Termination Notices").

55.    The Termination Notices demanded that ADR (i) return all the deeds contributed by the Debtors and other Supor Related Entities pursuant to Operating Agreements, (ii) direct and/or effectuate the re-conveyance of the Manor Avenue Property back to the Marital Trust; and quit and vacate from occupancy and possession of the JS Realty Property.

56.     The Debtor/Supor Related Entities intend to file a Verified Complaint against ADR and the joint venture entities created pursuant to the Operating Agreements seeking, among other things, (i) the avoidance of the delivery and recording of the deeds contributed pursuant to the Operating Agreements as fraudulent conveyances under the Bankruptcy Code and state law; (ii) the avoidance of the Operating Agreements as fraudulent conveyances under the Bankruptcy Code and state law; (iii) the avoidance of the Operating Agreements as unconscionable under the Uniform Commercial Code as enacted in the State of New Jersey; (iv) breach of contract; (v) breach of implied covenant of good faith and fair dealing; (vi) fraud; (vii) unjust enrichment; (viii) an injunction against any further transfer, assignment or disposition of any of the contributed deeds and/or underlying properties; (ix) ejectment of ADR from the JS Realty Property together with the assessment of damages for the unauthorized occupancy; and (x) the avoidance of the conveyance of the Manor Avenue Property as a fraudulent conveyance under the Bankruptcy Code and state law, and directing the re-conveyance of the property back to the Marital Trust.

**G.     The Restructuring Support Agreement**

57.     Debtors and Lenders have entered into a Restructuring Support Agreement, dated April 2, 2024 (the "Restructuring Support Agreement"), a copy of which is attached hereto as **Exhibit A**.  The Debtors hope to obtain the support of all other creditors, as well.

58.     The salient terms of the Restructuring Support Agreement can be summarized as follows:

    i.      The Debtors filing Petitions for relief under Chapter 11 of the Bankruptcy Code by April 2, 2024 (the "Bankruptcy Cases");

    ii.     The agreement between Debtors and Lender to market for sale the Debtor Properties pursuant to agreed bidding procedures, which

sales are to be effectuated pursuant to Section 363 of the Bankruptcy Code and a confirmed Plan (the "Sale Transactions"), subject to certain agreed carve-outs, with the proceeds from the Sale Transactions being distributed pursuant to the terms of the Plan

iii.    The agreement between Debtors and Lender regarding the Debtors' use of Lenders' Cash Collateral during the Bankruptcy Cases to be reflected in the cash collateral order and budgets attached hereto as, inclusive of Lender carve outs set forth in the Cash Collateral Order and the RSA;

iv.    The agreement between non-Debtor affiliate Supor Family LLC and Lender regarding the marketing and sale of real property owned by Supor Family LLC that is subject to Lender's secured claim;

v.    The achievement of certain Milestone dates regarding the filing of (a) a Cash Collateral Motion; (b) a complaint initiating an adversary proceeding against ADR; (c) a Bidding Procedures and Sale Authorization Motion (d) a motion to reject Master Leases and Lease between Debtors and affiliates as to the Debtor Properties; and (e) a Plan and Disclosure Statement.

vi.    A standstill as to any enforcement action(s) and any non-administrative filings in various litigations then pending between the parties during the pendency of the Bankruptcy Cases and pursuit of the sale process.

vii.    Mutual representations between the parties to cooperate in and support, and otherwise not impede or take action in contravention of, the sale process, reorganization and related matters related thereto consistent with the Plan Term Sheet attached as an Exhibit to the RSA.

viii.    A mutual undertaking between the parties to negotiate in good faith regarding any further matters as necessary to promote the sale process and reorganization.

ix.    The acknowledgment by the Debtor Parties as to the amount and validity of Lender's secured claim(s) and the validity of Lender's Loan Documents,

x.    The provision of releases and exculpations consistent with the Bankruptcy Code.

**H.**   **Motion to Jointly Administer Cases and for Designation of Lead Case**

59.     As stated above, I directly or indirectly own and/or control each Debtor. Each Debtor's primary asset is real property. The Debtors have no employees. All the financial records are maintained on a consolidated basis by other entities that I own and control and the Debtors file consolidated tax returns with those other entities.

60.     All the Debtors' assets and the proceeds therefrom are subject to the Lenders' liens, which are cross-collateralized against the Debtor' Properties. Many of the Debtors have common unsecured creditors.

61.     I believe that the combined fair market value of the Debtor Properties far exceeds the liens which encumber those properties. I also believe that transactions involving all or some of the Debtors' real estate will result in full payment of all allowed secured and unsecured claims.

62.     Joint administration of the Debtors' cases will improve the efficient administration of the Cases and promote a coordinated sale process, which will maximize value to the Lenders and other creditors and minimize the expense to the estates.[8]

**I.**   **Debtors' Utilities Motion**

63.     In the ordinary course of business, Debtors obtain electricity, gas, internet, telecommunications, telephone, television, waste, water, and sewage services (collectively, the "Utility Services") from at least one utility company (collectively, the "Utility Companies").

64.     Debtors have filed a motion requesting that the Court enter an order (i) prohibiting the Utility Companies from altering, refusing, or discontinuing Utility Services on account of pre-petition invoices, including the making of demands for security deposits or accelerated payment terms, and (ii) providing the Utility Companies with "adequate assurance of

payment" within the meaning of section 366 of the Bankruptcy Code.

65.    Preserving Utility Services at the Debtors' facilities on an uninterrupted basis is essential to the Debtors' ongoing operations and pursuit of the sale process. Any interruption in the Utility Services or any Utility Provider's refusal or discontinuance of service—even for a brief period—would distract management and employees from the Debtors' sale efforts and ongoing operations, thereby negatively impacting the value of the Debtors' assets to the detriment of all parties in interest. Accordingly, it is critical that the Debtors obtain the relief requested herein to ensure they can maintain and pay for Utility Services on an uninterrupted basis throughout these chapter 11 cases.

66.    Debtors propose to provide adequate assurance of payment to the Utility Companies for Utility Service provided to Debtor following the Petition Date in the form of a cash deposit equal to two weeks average consumption. Debtors submit that such cash deposit will provide adequate assurance to the Utility Companies of payment for future services. The proposed deposits for the Utility Companies are line items in the proposed Cash Collateral Order (defined below).

**J.    Cash Collateral**

67.    The Debtors have an immediate post-petition need to use cash collateral. Substantially all the Debtors' cash represents the cash collateral of Lenders and the Debtors will not be able to meet their near-term liquidity needs without access to cash collateral. The Debtors rely on the cash collateral generated from the Debtor Properties to, among other things, protect, preserve, and maintain the Debtor Properties and to fund operational expenses.

68.    The ability to satisfy these expenses when due is essential to the Debtors' continued operation of their business during the pendency of these Cases. The Debtors will

---

[8] Debtors are likely to seek substantive consolidation of some or all of the Bankruptcy Estates at a later date.

therefore be unable to operate their business or otherwise fund these Cases without access to cash collateral and will suffer immediate and irreparable harm to the detriment of all creditors and other parties in interest.

69.     The Lenders assert liens against all income derived from the Debtor Properties. As part of the Restructuring Support Agreement, Lenders agreed to the Debtors' use of the cash collateral reflected in the cash collateral order and budgets attached thereto (the "Cash Collateral Order") submitted with the Debtors' Motion for Authorization to Use Cash Collateral filed with the Debtors' First Day Motions in this matter.

## CONCLUSION

70.     I have consulted with the Debtors' proposed counsel and special counsel regarding the relief requested in the First Day Motions and understand each of the First Day Motions and the relief requested therein. To the best of my knowledge and belief, the factual statements contained in each of the First Day Motions are true and accurate, and each such factual statement is incorporated herein by reference.

71.     I believe that the relief requested in the First Day Motions is necessary, in the best interests of the Debtors' estates, their creditors, and all other parties in interest, and will allow the Debtors to operate with minimal disruption and maximize value preservation during the pendency of these Cases. Failure to grant the relief requested in any of the First Day Motions may result in immediate and irreparable harm to the Debtors, their businesses, and their estates. Accordingly, for the reasons set forth herein and in each respective First Day Motion, I request that the Court grant the relief requested in each of the First Day Motions.

I hereby certify that the foregoing statements made by me are true and that this Declaration is executed under penalty of perjury. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated this 2nd day of April, 2024

*/s/ Joseph Supor III*
Joseph Supor, III