

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Forman Holt
365 West Passaic Street
Suite 400
Rochelle Park, NJ 07662
Telephone: (201) 857-7110
Facsimile: (201) 665-6650
Charles M. Forman, Esq. (CMF-8937)
Michael E. Holt, Esq. (MEH-8735)
*Proposed Counsel for the Debtors*

K&L Gates LLP
One Newark Center
1085 Raymond Boulevard, 10th Floor
Newark, NJ 07102
Telephone: (973) 848-4000
Facsimile: (973) 848-4001
Daniel M. Eliades, Esq. (DME-6203)
David S. Catuogno, Esq (DSC-1397)
William Waldman, Esq. (WLW-1452)
Caitlin C. Conklin, Esq. (CCC-5117)
*Special Counsel for the Debtors*

Order Filed on April 29, 2024
by Clerk,
U.S. Bankruptcy Court
District of New Jersey

In re:

Supor Properties Enterprises LLC, *et al.*[1],

Debtors.

Case No. 24-13427 (SLM)
Judge: Hon. Stacey L. Meisel
Chapter 11

(Jointly Administered)

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Supor Properties Enterprises LLC (5580); J Supor 136-1 Realty LLC (3205); Supor-172 Realty LLC (EIN No. 5662); Supor Properties Breiderhoft LLC (7258); Supor Properties Devon LLC (6357); Shore Properties Associates North LLC (6707); Supor Properties 600 Urban Renewal, LLC (8604); JS Realty Properties, LLC (2497); and Supor Properties Harrison Avenue, LLC (1728).

**ORDER (I) (A) APPROVING BIDDING AND AUCTION PROCEDURES, (B) SCHEDULING BID DEADLINES AND AN AUCTION, (C) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, AND (II) (A) AUTHORIZING THE SALE OF <u>ASSETS AND (B) GRANTING RELATED RELIEF</u>**

The relief set forth on the following pages, numbered three (3) through ten (10), is hereby

**ORDERED**.

**DATED: April 29, 2024**

Honorable Stacey L. Meisel
United States Bankruptcy Judge

| | |
|---|---|
| In re: | Supor Properties Enterprises, LLC, et al |
| Case No. | 24-13427 (SLM) |
| Caption: | Order (I) (a) Approving Bidding and Auction Procedures, (b) Scheduling Bid Deadlines and an Auction, (c) Approving the Form and Manner of Notice Thereof, and (II) (a) Authorizing the Sale of Assets and (b) Granting Related Relief |

Upon the *Debtors' Motion Seeking Entry of an Order (I) (a) Approving the Bidding and Auction Procedures , (b) Scheduling Bid Deadlines and an Auction, (c) Approving the Form and Manner of Notice Thereof, and (II) (a) Authorizing Sale of Assets and (b) Granting Related Relief* (the "Motion")[1] of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), for entry of an order (this "Order") (a) approving the proposed marketing, auction, and bidding procedures attached as Exhibit 1 to this Order (the "Bidding Procedures"), by which the Debtors will solicit and select the highest or otherwise best offer(s) for the sale, joint venture or other transactions (the "Sale Transactions") of some or all of the Debtor Properties (as defined in the Motion) potentially in conjunction with certain non-Debtor property owned by related entity Supor Family LLC; (b) establishing certain dates and deadlines related thereto and scheduling an auction or auctions, if any, for the Sale Transactions (the "Auction(s)"); (c) approving the manner of notice of the Auction and Sale Approval process including, if necessary, a sale hearing (the "Sale Hearing(s)") as may be necessary;  (d) authorizing the Sale Transaction; and (e) granting related relief, all as more fully set forth in the Motion; the Application for Order Shortening Time (ECF No. __), and the Motion supported by, *inter alia*, the First Day Declaration of Joseph Supor III (ECF No. 7); and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey,

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Bidding Procedures (as defined below), as applicable.

| In re: | Supor Properties Enterprises, LLC, et al |
|---|---|
| Case No. | 24-13427 (SLM) |
| Caption: | Order (I) (a) Approving Bidding and Auction Procedures, (b) Scheduling Bid Deadlines and an Auction, (c) Approving the Form and Manner of Notice Thereof, and (II) (a) Authorizing the Sale of Assets and (b) Granting Related Relief |

entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor

**IT IS HEREBY ORDERED THAT**:

1. The Motion is **GRANTED** as set forth herein.

2. The Debtors have articulated good and sufficient reasons for authorizing and approving the Bidding Procedures, which are fair, reasonable, and appropriate under the circumstances and designed to maximize the recovery on, and realizable value of the Debtors' enterprise.

3. The Debtors' proposed notice of the Motion and the Hearing was (i) appropriate and reasonably calculated to provide all interested parties with timely and proper notice, (ii) in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and (iii) adequate and sufficient under the circumstances of these Chapter 11

(Page | 4)

| In re: | Supor Properties Enterprises, LLC, et al |
|---|---|
| Case No. | 24-13427 (SLM) |
| Caption: | Order (I) (a) Approving Bidding and Auction Procedures, (b) Scheduling Bid Deadlines and an Auction, (c) Approving the Form and Manner of Notice Thereof, and (II) (a) Authorizing the Sale of Assets and (b) Granting Related Relief |

Cases, and no other or further notice is required. A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to all interested persons and entities.

4.      All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled prior to or at the Hearing are hereby overruled.

**II.      Important Dates and Deadlines.**

5.      **Stalking Horse Bid Deadline for the RDA Properties**. June 25, 2024, at 5:00 p.m., prevailing Eastern Time, is the deadline by which applicable Debtors may, but are not required to, designate a received Qualified Bid as a Stalking Horse Bid relative to the RDA Properties, after consultation with the Consultation Parties. Debtors shall file any Notice of Stalking Horse Agreement as to the RDA Properties with the Bankruptcy Court within one (1) business day after executing any applicable Stalking Horse Agreement.

6.      **Bid Deadline for the RDA Properties**. July 9, 2024, at 5:00 p.m., prevailing Eastern Time, is the deadline by which all Qualified Bids must be **actually received** by the parties specified in the Bidding Procedures.

7.      **Auction for the RDA Properties**. The date and time of the Auction for the RDA Properties, if needed, is July 23, 2024, at 10:00 a.m. prevailing Eastern Time, which date and time may be extended by the Debtors in consultation with the Consultation Parties, upon written notice to the Court. The Auction will be held at the offices of the proposed special counsel to the Debtors: K&L Gates LP, One Newark Center – 10th Floor, Newark, New Jersey 07102 (and Debtors and CBRE reserve the right to allow for virtual participation at the Auction). Only the Debtors, the

In re:        Supor Properties Enterprises, LLC, et al
Case No.    24-13427 (SLM)
Caption:    Order (I) (a) Approving Bidding and Auction Procedures, (b) Scheduling Bid
            Deadlines and an Auction, (c) Approving the Form and Manner of Notice
            Thereof, and (II) (a) Authorizing the Sale of Assets and (b) Granting Related
            Relief

Consultation Parties, Qualified Bidders, the U.S. Trustee, and any other parties as the Debtors may

determine to include in their reasonable discretion, in each case, along with the representatives and

advisors, shall be entitled to attend the Auction, and only Qualified Bidders will be entitled to

make Bids at the Auction. The Debtors shall send written notice of the date, time, and place of the

Auction to the Qualified Bidders and the U.S. Trustee no later than two business days before such

Auction. For the avoidance of doubt, the Debtors may also conduct more than one Auction with

respect to the Debtor Properties.

       8.    **<u>Evaluation of Bids.</u>**  At the conclusion of the Auction Debtors, in the exercise of

their business judgment, shall have the right to determine the highest and best bid or combination

of bids and designate one or more Successful Bids. Debtors shall have the right and ability to

consider and select any bid or combination of bids as to the RDA Properties, Non-RDA Properties

and/or Sanford Property that maximizes the value and benefit to the respective bankruptcy estates

(and Supor Family LLC, as applicable).

       9.    **<u>Notice of Successful Bidder of the RDA Properties</u>**. No later than three (3) days

after the Auction for the RDA Properties, the Debtors shall file a Notice of Successful Bidder, or

Successful Bidders, in the event that the Debtors determine to sell the 600 Guyon Property separate

and apart from the other RDA Properties.

       10.    **<u>Sale Objection to RDA Properties Deadline.</u>** Objections to the Sale of the RDA

Properties, if any, must be made within three (3) days of the Sale Approval Request(s) filed with

the Court on Notice to all creditors and Qualified Bidders (the "<u>Sale Objection Deadline</u>").

| In re: | Supor Properties Enterprises, LLC, et al |
| Case No. | 24-13427 (SLM) |
| Caption: | Order (I) (a) Approving Bidding and Auction Procedures, (b) Scheduling Bid Deadlines and an Auction, (c) Approving the Form and Manner of Notice Thereof, and (II) (a) Authorizing the Sale of Assets and (b) Granting Related Relief |

11.  **Sale Order for RDA Properties.** The Debtors shall file and serve a form of proposed Sale Order for the RDA Properties along with the Sale Approval Request therefor.

12.  **Sale Hearing for RDA Properties.** If necessary, five (5) days after the filing of any Sale Objection or as soon thereafter as the parties may be heard.

13.  **Sale Closing for RDA Properties.** Closing of the Sale Transaction for the RDA Properties shall occur no later than of fourteen (14) days after the Bankruptcy Court order approving the Sale Transaction(s).

14.  **Stalking Horse Bid Deadline for the Non-RDA Properties**. July 2, 2024, at 5:00 p.m., prevailing Eastern Time, is the deadline by which applicable Debtors may, but are not required to, designate a received Qualified Bid as a Stalking Horse Bid relative to the Non-RDA Properties, after consultation with the Consultation Parties. Debtors shall file any Notice of Stalking Horse Agreement as to the Non-RDA Properties with the Bankruptcy Court within one (1) business day after executing any applicable Stalking Horse Agreement.

15.  **Bid Deadline for the Non-RDA Properties**. July 16, 2024, at 5:00 p.m., prevailing Eastern Time, is the deadline by which all Qualified Bids must be **actually received** by the parties specified in the Bidding Procedures.

16.  **Auction for the Non-RDA Properties**. The date and time of the Auction(s) for the Non-RDA Properties, if needed, is July 30, at 10:00 a.m. prevailing Eastern Time, which auction may be bifurcated into one or more auction(s) and which date and time may be extended or modified by the Debtors in consultation with the Consultation Parties, upon written notice to the

| | |
|---|---|
| In re: | Supor Properties Enterprises, LLC, et al |
| Case No. | 24-13427 (SLM) |
| Caption: | Order (I) (a) Approving Bidding and Auction Procedures, (b) Scheduling Bid Deadlines and an Auction, (c) Approving the Form and Manner of Notice Thereof, and (II) (a) Authorizing the Sale of Assets and (b) Granting Related Relief |

Court. The Auction will be held at the offices of the proposed special counsel to the Debtors: K&L Gates LP One Newark Center – 10th Floor, Newark, New Jersey 07102 (and Debtors and CBRE reserve the right to allow for virtual participation at the Auction). Only the Debtors, the Consultation Parties, Qualified Bidders, the U.S. Trustee, and any other parties as the Debtors may determine to include in their reasonable discretion, in each case, along with the representatives and advisors, shall be entitled to attend the Auction(s), and only Qualified Bidders will be entitled to make Bids at the Auction(s). The Debtors shall send written notice of the date, time, and place of the Auction to the Qualified Bidders and the U.S. Trustee no later than two business days before such Auction. For the avoidance of doubt, the Debtors may also conduct more than one Auction with respect to the Debtor Properties.

17.    **Evaluation of Bids.**  At the conclusion of the Auction Debtors, in the exercise of their business judgment, shall have the right to determine the highest and best bid or combination of bids and designate one or more Successful Bids. Debtors shall have the right and ability to consider and select any bid or combination of bids as to the Non-RDA Properties and/or Sanford Property that maximizes the value and benefit to the respective bankruptcy estates (and Supor Family LLC, as applicable).

18.    **Notice of Successful Bidder of the Non-RDA Properties**. No later than three (3) days after the Auction(s) for the Non-RDA Properties, the Debtors shall file a Notice of Successful Bidder of Successful Bidders depending on the results of the Auction(s) and the exercise of the Debtors' discretion.

| In re: | Supor Properties Enterprises, LLC, et al |
| Case No. | 24-13427 (SLM) |
| Caption: | Order (I) (a) Approving Bidding and Auction Procedures, (b) Scheduling Bid Deadlines and an Auction, (c) Approving the Form and Manner of Notice Thereof, and (II) (a) Authorizing the Sale of Assets and (b) Granting Related Relief |

19.    **Sale Objection Deadline.** Objections to the Sale of the Non-RDA Properties, if any, must be made within three (3) days of the applicable Sale Approval Request(s) filed with the Court on Notice to all creditors and Qualified Bidders.

20.    **Sale Order.** The Debtors shall file and serve a form of proposed Sale Order for the Non-RDA Properties along with the Sale Approval Request relative to the applicable Debtor Property(ies).

21.    **Sale Hearing.** If necessary, three (3) days after the filing of any applicable Sale Objection or as soon thereafter as the parties may be heard.

22.    **Sale Closing.** Closing of the Sale Transaction for the Non-RDA Properties shall occur no later than 14 days after the Bankruptcy Court order approving the Sale Transaction(s).

23.    The Bidding Procedures, substantially in the form attached hereto as **Exhibit 1**, are incorporated herein and are hereby approved in their entirety, and the Bidding Procedures shall govern the submission, receipt, and analysis of all Bids relating to any proposed Sale Transaction(s). Any party desiring to submit a Bid shall comply with the Bidding Procedures and this Order. The Debtors are authorized to take all actions necessary to implement the Bidding Procedures. Subject to the terms of the Bidding Procedures, the Debtors may modify the Bidding Procedures as necessary or appropriate to maximize value for their estates.

24.    The Auction Notice, substantially in the form attached hereto as **Exhibit 2**, is hereby approved. As soon as reasonably practicable following the entry of this Order and the marketing period, the Debtors will cause the Auction Notice to be served upon (a) the Office of

| | |
|---|---|
| In re: | Supor Properties Enterprises, LLC, et al |
| Case No. | 24-13427 (SLM) |
| Caption: | Order (I) (a) Approving Bidding and Auction Procedures, (b) Scheduling Bid Deadlines and an Auction, (c) Approving the Form and Manner of Notice Thereof, and (II) (a) Authorizing the Sale of Assets and (b) Granting Related Relief |

the United States Trustee for the District of New Jersey; (b) the Debtors' 30 largest unsecured creditors (on a consolidated basis); (c) counsel to 1000 Frank E Rodgers 1, LLC and Frank E. Rodgers 2, LLC; (d) the United States Attorneys' Office for the District of New Jersey; (e) the Internal Revenue Services; (f) the U.S. Securities and Exchange Commission; (g) the Office of the Attorney General for the State of New Jersey; (h) the New Jersey Division of Taxation; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002.

25.     Pursuant to Local Rule 6004-2: (a) each bidder participating at the Auction shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale, as set forth in the Bidding Procedures; (b) the Auction shall be conducted openly; and (c) the Auction shall be transcribed or videotaped.

## III.    Miscellaneous

26.     The Debtors and Supor Family LLC, as applicable, will entertain Qualified Bids for the Debtor Properties and the Sanford Property.  Supor Family LLC is, however, entitled to unilaterally withdraw the Sanford Property from the sale process approved by this Order.

27.     The Debtors shall have the right to: (i) seek Bankruptcy Court approval to modify the Sale Schedules; (ii) conduct multiple Sale Transactions across one or more Auctions to maximize the value of the estates, in accordance with the Bidding Procedures; (iii) in their sole and absolute discretion, withdraw any Debtor Property from the sale process should Debtors' receive one or more Successful Bids for other Debtor Properties providing for full payment of each and all of Lender's Allowed Claims (as defined in the RSA) and/or (iv) exercise a Fiduciary Out

| In re: | Supor Properties Enterprises, LLC, et al |
|---|---|
| Case No. | 24-13427 (SLM) |
| Caption: | Order (I) (a) Approving Bidding and Auction Procedures, (b) Scheduling Bid Deadlines and an Auction, (c) Approving the Form and Manner of Notice Thereof, and (II) (a) Authorizing the Sale of Assets and (b) Granting Related Relief |

(as defined in the RSA). Supor Family LLC shall have the right, in its sole discretion, to withdraw the Sanford Property from the sale process outlined herein.

28.     Debtors have the right to: (i) determine which bids are Qualifying Bids; (ii) determine which Qualifying Bid is the highest or otherwise best bid, and which Qualifying Bid is the next highest or otherwise best bid; (iii) reject any bid that is (a) inadequate or insufficient, (b) not in conformity with these sales procedures, or the requirements of the Bankruptcy Code, or (c) contrary to the best interests of the Debtor; (iv) waive terms and conditions set forth herein with respect to Qualified Bids; and (v) to select a Qualifying Bid before the RDA Bid Deadline or Non-RDA Bid Deadline and move forward to seek Court approval of one or more direct Sale Transaction(s).

29.     Debtors, in their sole and absolute discretion, shall have the right to withdraw any Non-RDA Property from the sale process to the extent that the proceeds from other approved Sale Transaction(s) will be sufficient to satisfy the Debtors obligations to the Lenders and their other obligations to creditors in these Bankruptcy Cases.

30.     The failure to include or reference a particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness or enforceability of such a provision in the Bidding Procedures.

31.     The Court, at the request of the Debtors, and subject to its availability, may modify the dates of and adjourn any hearing(s) set by this Order without further Order of this Court,

In re:        Supor Properties Enterprises, LLC, et al
Case No.      24-13427 (SLM)
Caption:      Order (I) (a) Approving Bidding and Auction Procedures, (b) Scheduling Bid
              Deadlines and an Auction, (c) Approving the Form and Manner of Notice
              Thereof, and (II) (a) Authorizing the Sale of Assets and (b) Granting Related
              Relief

*provided* that the Debtors will serve notice to all requisite parties informing them of such

modification.

32.    Unless otherwise set forth in this Order, the Debtors, may modify any of the

deadlines set forth herein or provide for additional deadlines within a Sale Schedule, *provided* that

the Debtors will disclose all applicable deadlines in the applicable Auction Notice(s) or revised

Auction Notice(s).

33.    The Debtors may modify any Good Faith Deposit, in consultation with the

Consultation Parties, as necessary or appropriate, based on the Debtor Property(ies) being sold.

34.    In the event of any inconsistencies between this Order and the Motion and/or the

Bidding Procedures, this Order shall govern in all respects.

35.    The Debtors are authorized to take all actions necessary to effectuate the relief

granted pursuant to this Order in accordance with the Motion.

36.    Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Order shall

be effective and enforceable immediately upon entry hereof.

37.    Notice of the Motion as provided therein shall be deemed good and sufficient notice

of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied

by such notice.

38.    The requirement set forth in Local Rule 9013-1(a)(3) that any motion be

accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion

or otherwise waived.

(Page | 12)

In re:          Supor Properties Enterprises, LLC, et al
Case No.      24-13427 (SLM)
Caption:      Order (I) (a) Approving Bidding and Auction Procedures, (b) Scheduling Bid
              Deadlines and an Auction, (c) Approving the Form and Manner of Notice
              Thereof, and (II) (a) Authorizing the Sale of Assets and (b) Granting Related
              Relief

     39.    This Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation, interpretation, and enforcement of this Order.

**<u>Exhibit 1</u>**

**Bidding Procedures**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**
Forman Holt
365 West Passaic Street
Suite 400
Rochelle Park, NJ 07662
Telephone: (201) 857-7110
Facsimile: (201) 665-6650
Charles M. Forman, Esq. (CMF-8937)
Michael E. Holt, Esq. (MEH-8735)
*Proposed Counsel for the Debtors*

K&L Gates LLP
One Newark Center
1085 Raymond Boulevard, 10th Floor
Newark, NJ 07102
Telephone: (973) 848-4000
Facsimile: (973) 848-4001
Daniel M. Eliades, Esq. (DME-6203)
David S. Catuogno, Esq (DSC-1397)
William Waldman, Esq. (WLW-1452)
Caitlin C. Conklin, Esq. (CCC-5117)
*Special Counsel for the Debtors*

---

In re:

Supor Properties Enterprises LLC, *et al.*[1],

                              Debtors.

Case No. 24-13427 (SLM)
Judge: Hon. Stacey L. Meisel
Chapter 11

(Jointly Administered)

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Supor Properties Enterprises LLC (5580); J Supor 136-1 Realty LLC (3205); Supor-172 Realty LLC (EIN No. 5662); Supor Properties Breiderhoft LLC (7258); Supor Properties Devon LLC (6357); Shore Properties Associates North LLC (6707); Supor Properties 600 Urban Renewal, LLC (8604); JS Realty Properties, LLC (2497); and Supor Properties Harrison Avenue, LLC (1728).

F0214604 - 1
318503760.1

### MARKETING PROCESS AND BIDDING PROCEDURES FOR THE SUBMISSION, RECEIPT, AND ANALYSIS OF BIDS IN CONNECTION WITH THE SALE OF DEBTOR PROPERTIES

## I.    Debtor Properties.

The Debtors are seeking to sell all of their assets, or any portion thereof, including, but not limited to: (i) 1000 Frank E Rodgers Boulevard, Harrison NJ (lot 5.02 in block 151, lot 17.02 in block 137 and lot 1.02 in block 149); (ii) 1000 Frank E Rodgers Boulevard, Harrison NJ (lot 1.07 in block 136); (iii) 1000 Frank E Rodgers Boulevard, Harrison NJ (lot 1 in block 172); (iv) 12 Breiderhoft Road, Kearny, NJ (lot 8.02 in block 252); (v) 201 Devon Terrace, Kearny, NJ (lot 4.02 in block 252); (vi) 600 Guyon Drive, Harrison NJ (lot 16.01 in block 150); (vii) 401 Supor Blvd a/k/a part of 500 Supor Blvd a/k/a 608 Supor Blvd, Harrison NJ (lot 1.02 in block 222); (vii) 751 Harrison Avenue, Harrison, NJ (lot 9 in block 197); and (ix) 94 Mantoloking Road, Brick, NJ (lots 7, 8 and 9 in block 68), in each case, free and clear of all liens, claims, interests, or other encumbrances (each, "Debtor Property" collectively, the "Debtor Properties").

The Debtors seek to sell the Debtor Properties to the highest bidder(s) to maximize value for their estates. To provide the most competitive and flexible process, the Debtors seek to establish standardized procedures leading to and culminating in one or more auction(s) [2] that create an open and level playing field that permits potential purchasers the flexibility to propose an acquisition of the RDA Properties (*defined below*) or a one of Non-RDA Properties (*defined below*). To accomplish this end, the Debtors will first engage in a sale process for the RDA Properties, and then will engage in a sale process for the Non-RDA Properties. The processes for each will have nearly identical procedures. Additionally, the Debtors will entertain bids for the non-RDA Properties along with bids for the RDA Properties provided that said bids allocate the proposed purchase prices between the RDA Properties on the one hand and the individual non-RDA Properties on the other hand.

## The RDA Properties.

The RDA Properties consist of the following properties: (i) 1000 Frank E Rodgers Boulevard, Harrison NJ (lot 5.02 in block 151, lot 17.02 in block 137 and lot 1.02 in block 149); (ii) 1000 Frank E Rodgers Boulevard, Harrison NJ (lot 1.07 in block 136);  (iii) 1000 Frank E Rodgers Boulevard, Harrison NJ (lot 1 in block 172 (Properties identified at subparagraphs (i) through (iii) are referred to collectively as the "FER Property"); and (iv) 600 Guyon Drive, Harrison NJ (lot 16.01 in block 150) (the "600 Guyon Property") together with the FER Property and any causes of action or other rights of the Debtors that run with or directly relate to these

---

[2] The Debtors may remove one or more of the Debtor Properties from the auction process and seek the Court's approval for a direct sale in the event they determine, after discussion with the Consultation Parties, that a Qualified Bid represents a sufficient and maximized return to the estate for the applicable Debtor Property.

properties, including tax abatements and the Harrison RDA (defined below), the "RDA Properties").

The RDA Properties are the subject of an approved Redevelopment Agreement with the Town of Harrison (the "Harrison RDA") which gives the Debtors the right to redevelop the RDA Properties and construct 1500 residential units, a 200-room hotel, 151,960 square feet of retail space, 1,000,000 square feet of office space and 4,570 parking spaces. The Harrison RDA was approved by the Town of Harrison on June 1, 2019, and recorded on December 11, 2019, and, on February 24, 2021, the Town of Harrison approved, and the parties executed, an Amended and Restated Redevelopment Agreement representing final approval of the RDA.

Any Qualified Bid as to the RDA Properties must include all of the RDA Properties other than the 600 Guyon Property. Any Qualified Bid relative to the FER Property may: (i) propose the purchase of the 600 Guyon Property as part of that same Sale Transaction; or (ii) exclude the 600 Guyon Property. Bidders may also submit Qualified Bids to purchase the 600 Guyon Property on a standalone basis. Debtors reserve the right to consider and select any Bid or combination of Bids as to the RDA Properties that maximizes the value and benefit to the respective bankruptcy estates.

Any Qualified Bid relative to the RDA Properties may propose to purchase some or all the Non-RDA Properties, as well as the Sanford Property, but there is no obligation for a Qualified Bid relative to the RDA Properties to include any Non-RDA Property or the Sanford Property. If a Qualified Bid seeks to purchase the RDA Properties with one or more Non-RDA Property and/or the Sanford Property, it must allocate the Bid price between the combined RDA Properties and each of the Non-RDA Properties, 600 Guyon Property, and/or Sanford Property included in the Bid

Each allocated component of a bid shall be considered a binding Bid as to the subject Debtor Property. Debtors reserve the right to consider and select any bid or combination of bids as to the RDA Properties, non-RDA Properties and/or Sanford Property that maximizes the value and benefit to the respective bankruptcy estates.

The Marketing Period (*as defined below*) for the RDA Properties will commence on April 22, 2024.

The Stalking Horse Deadline for the RDA Properties (*as defined below*) – if applicable—**June 25, 2024, at 5:00 p.m. (prevailing Eastern Time)**

The Bid Deadline for the RDA Properties will be **July 9, 2024, at 5:00 p.m. (prevailing Eastern Time)**.

The Auction for the RDA Properties will commence on **July 23, 2024 at 10:00 a.m. (prevailing Eastern Time).**

**The Non-RDA Properties.**

The Non-RDA Properties consist of the following properties: (i) 12 Breiderhoft Road, Kearny, NJ (lot 8.02 in block 252); (ii) 201 Devon Terrace, Kearny, NJ (lot 4.02 in block 252); (iii) 401 Supor Blvd a/k/a part of 500 Supor Blvd a/k/a 608 Supor Blvd, Harrison NJ (lot 1.02 in block 222); (iv) 751 Harrison Avenue, Harrison, NJ (lot 9 in block 197); and (v) 94 Mantoloking Road, Brick, NJ (lots 7, 8 and 9 in block 68) (collectively, and, together with any causes of action or other rights of the Debtors that run with or directly relate to these properties, including tax abatements, and together with the Sanford Property (defined below) the "Non-RDA Properties").

Supor Family LLC owns real property located at 129 Sanford Avenue, Kearny, NJ (lot 14.01 block 279) (the "Sanford Property").[3] Supor Family is not a debtor in these or any other bankruptcy proceeding, but Supor Family LLC is a party to the RSA (defined below) and sale of the Sanford Property is contemplated in the RSA.  The Sanford Property is adjacent to the JS Realty Property and consists of approximately 4.41 acres improved by a warehouse/office building. The Non-RDA Properties can be purchased together or independently; provided, however, that the 12 Breiderhoft Road Non-RDA Property and the 201 Devon Terrace Non-RDA Property are available to be purchased together as a particular subset.

The Marketing Period (*as defined below*) for the Non-RDA Properties will commence on April 22, 2024.

The Stalking Horse Deadline for the non-RDA Properties (*as defined below*) – if applicable— **July 2, 2024, at 5:00 p.m. (prevailing Eastern Time)**

The Bid Deadline (*as defined below*) for the Non-RDA Properties will be **July 16, 2024, at 5:00 p.m. (prevailing Eastern Time)**.

The Auction for the Non-RDA Properties will commence on **July 30, 2024, at 5:00 p.m. (prevailing Eastern Time)**.

**I.      Marketing Period/Process**

- Offering Memorandum: Complete detailed document package outlining the properties, physical characteristics, zoning, real estate tax liabilities, and any in-place leases.

---

[3] The Sanford Property also secures the Mortgage Indebtedness to the Lender. It is possible that a sale of the Sanford Property together with the JS Realty Property will enhance the value of each property as the "combined" properties would have enhanced ingress and egress. Accordingly, Debtors and Supor Family LLC will entertain bids for the Sanford Property and any of the Debtor Properties.  Supor Family LLC, however, specifically reserves the right to withdraw the Sanford Property from the sale process within these Bankruptcy Cases and pursue the sale thereof, or not, outside of the sale process within these Bankruptcy Cases.

- E-Mail Marketing: CBRE will prepare an email teaser which is sent out to a proprietary database of over 5,000 institutional and private investors.

- CBRE Deal Flow: The properties will be marketed via CBRE Deal Flow. CBRE Deal Flow is CBRE's publicly available, online listing platform for all property sales (single property or portfolio). It provides real-time market insight and inventory, empowering investors to make intelligent investment decisions confidently, easily and quickly.

- Press Advertising: The offering will be advertised in commercial real estate publications, including Real Estate Alert and Real Estate New Jersey.

(The marketing period for the RDA Properties and the Non-RDA Properties shall be collectively referred to as the "Marketing Period")

**II.     Public Announcement of Auction.**

Within three (3) days of the occurrence of the applicable Stalking Horse Deadline, unless the Debtors have determined to cancel the Auction as set forth herein and except as otherwise agreed to by Debtors and 1000 Frank E. Rodgers 1, LLC and Frank E. Rodgers 2, LLC (collectively, and together with their designee(s), assignee(s) or nominee(s), the "Lenders" and each such entity, a "Lender"), the Debtors shall serve on all parties, a notice (A) setting forth (I) the date, time, and place of the (a) Auction and (b) the Sale Approval Request Process (as defined below) and (ii) the deadlines and procedures for objecting to the proposed Sale Transaction(s), and (B) the Bidding Procedures (the "Auction Notice"); and shall publish the auction notice, with any modifications necessary for ease of publication, on one occasion in *The New York Times or Wall Street Journal* to provide notice to any other potential interested parties, which publication is in addition to any publication by CBRE as the Debtors' engaged real estate broker. Debtors shall also upload said materials into the data room(s) for each of the Debtor Properties and the Sanford Property. The Auction Notice shall include a complete list and general description of the Debtor Properties for sale.

**III.     Potential Bidder Requirements.**

To participate in the bidding process or otherwise be considered for any purpose hereunder, including to receive access to due diligence materials, a person or entity interested in purchasing the Debtor Properties or part of the Debtor Properties (a "Potential Bidder") must deliver or have previously delivered to the Debtors the following preliminary documentation (collectively, the "Preliminary Bid Documents"):

a.    an executed confidentiality agreement (a "Confidentiality Agreement") in form and substance acceptable to the Debtors; and

b.    sufficient information that the Potential Bidder has or can reasonably obtain the financial capacity to close a purchase of any portion, all, or substantially all of the Debtor Properties, the adequacy of which must be acceptable to the Debtors, in consultation with the Consultation Parties.

c.     a statement detailing whether the Potential Bidder is partnering with or otherwise working with any other interested party in connection with the potential submission of a joint Bid, the identity of any such party or parties, and a concise description of the nature of such partnership or joint Bid to the extent reasonably practicable.

The Debtors, in consultation with their advisors, will determine and notify each Potential Bidder whether such Potential Bidder has submitted adequate documents so that such Potential Bidder may proceed to conduct due diligence and submit a Bid.

**IV.     Stalking Horse Reimbursement.**

Upon entry of the Bid Procedures Order, the Debtors shall be authorized, but not obligated, in an exercise of their business judgment to (a) select one or more Qualified Bidders to act as a stalking horse bidder (each a "Stalking Horse Bidder") in connection with the sale process and/or any ultimate Auction and (b) in connection with any stalking horse agreement with a Stalking Horse Bidder, the Debtors may seek approval from the Court for Stalking Horse reimbursement of actual and necessary due diligence expenses up to a maximum of $100,000, and, if provided for under the stalking horse agreement, may further seek court approval for a reasonable "break-up" fee expressed as a percentage of the Stalking Horse Bid not to exceed three percent (3%), provided that any overbid must be sufficient to satisfy any Stalking Horse reimbursement and "Break-up fee" approved by the Court .

**V.     Qualified Bid/Bidder Qualification Requirements.**

To be deemed a Qualified Bidder and be deemed eligible to participate in any Auction, a Potential Bidder must deliver to the Debtors and their advisors (i) an irrevocable offer for the purchase of some or all of the Debtor Properties (each, a "Bid"), and shall meet the following criteria, in each case, on or prior to the Bid Deadline (as defined below); or, in the event the Debtors select one or more Stalking Horse Bidder; (ii) documentation satisfying all of the below criteria except for the requirement of section (c) to make a specific monetary offer on specific property(ies); and (iii) a statement identifying which of the Debtor Property(ies) and/or the Sanford Property that the Potential Bidder intends to bid upon and post the required deposit therefor as indicated below:

a.     **Purchased Debtor Property and Assumed Liabilities**: Each Bid must clearly state the following: (a) Debtor Properties, or the portion thereof identified with reasonable specificity, to be purchased and/or liquidated or otherwise disposed of; and (b) the liabilities and obligations to be assumed, (including any executory contracts or unexpired leases to be assumed and assigned), including any debt and cure costs to be assumed.

b.     **Good Faith Deposit**: Except with respect to any credit bid (each a "Credit Bid"), the Bid must be accompanied by a cash deposit in the amount equal to 10% of the aggregate purchase price of the Bid to be held by a title company designated by the Potential Bidder and acceptable to the Debtors (the "Good Faith Deposit"). In the event the Debtors select one or more Stalking Horse Bidder, in order to be deemed

a Qualified Bidder at the scheduled auction(s), a Potential Bidder must post a deposit equal to 10% of the Stalking Horse Bid on the property(ies) that the Potential Bidder intends to bid upon. To the extent that a Bid is modified at or prior to the Auction, the applicable Potential Bidder must adjust its Good Faith Deposit so that it equals 10% of the increased aggregate purchase price promptly and in no event later than one (1) business day following the conclusion of the Auction. Lenders shall not be obligated to submit a Credit Bid until the Auction.

c. **Purchase Price**: Each Bid must (a) clearly set forth the purchase price to be paid, assuming a purchase of the applicable Debtor Properties and any assumption of liabilities (the "Purchase Price"), (b) identify separately the cash and non-cash components of the Purchase Price, and (c) indicate the allocation of the Purchase Price among the applicable Debtor Properties; *provided* that, for the avoidance of doubt, such allocation shall not prejudice the rights of any party in interest to contest such allocation. The Purchase Price should be a single point value in U.S. Dollars for the applicable Debtor Properties on a cash-free, debt-free basis. Any Bid for substantially all of the Debtor Properties must also include a statement as to whether the Bid is conditioned on purchasing all Debtor Properties or whether the Qualified Bid should be viewed as separate Bid for one or more real properties in the Debtor Properties.

d. **Same or Better Terms; Bid Documents**: Each Bid must include duly executed and non-contingent, where applicable, transaction documents necessary to effectuate the transactions contemplated in the Bid (the "Bid Documents"). The Bid Documents shall include: (a) a redline copy of the form of purchase agreement that will be provided by the Debtors that such bidder is willing to execute[4], which redline edits may not change material terms to the detriment of the Debtors and must be on at least equivalent or better terms to the bankruptcy estate as the form purchase agreement (b) a schedule of contracts and leases to be assumed to the extent applicable to the Bid, (c) ; any other material documents integral to such Bid, and (d) a statement from the Potential Bidder that the Qualified Bid will be irrevocable (whether or not such Qualified Bid is selected as the Successful Bid or next highest or otherwise best Bid (the "Back-Up Bid")) until the consummation of the Sale Transaction.

e. **No Qualified Bidder Bid Protections**: Unless submitted prior to the applicable Stalking Horse Deadline in connection with a request to be named as a Stalking Horse Bidder, and unless the Qualified Bidder is specifically designated as a Stalking Horse Bidder under these Bid Procedures, a Qualified Bid must include a statement that the Bid does not entitle such bidder to any Break-Up Fee, termination fee, Expense Reimbursement, or similar type of payment or reimbursement and a

---

[4] For purposes of clarity, there will be certain differences between the form of purchase and sale agreement for the RDA Properties and the non-RDA Properties, and potentially even between the forms for the various non-RDA Properties. The data room for each property will be populated with the appropriate form purchase agreement for that property.

waiver of any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code related to bidding for the applicable Debtor Properties.

f.  **Sources of Financing**: A Qualified Bid must include evidence of financial wherewithal to consummate the proposed Sale Transaction set forth in its Bid with cash on hand or, to the extent that the Bid is not accompanied by such evidence, the Bid must include committed financing, documented to the Debtors' satisfaction, that demonstrates that the Potential Bidder has received sufficient debt and/or equity funding commitments to satisfy the Potential Bidder's obligations under the proposed Sale Transaction and other obligations under its Bid. Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Debtors.

**Contingencies; No Financing or Diligence Outs**: The Bid must not contain any contingencies as to the validity, effectiveness, or binding nature of the Bid, including, without limitation, contingencies for due diligence and inspection or financing of any kind (including any conditions pertaining to financial performance, conditions, or prospects) except that as to all properties other than the RDA Properties, unless waived in the redline PSA submitted as part of a Qualified Bid, the Successful Bidder shall be afforded thirty (30) days after execution of the PSA to conduct limited due diligence relative to environmental issues (the "Environmental Due Diligence"). All diligence other than the limited Environmental Due Diligence permitted relative to the non-RDA Properties must be completed before the Bid Deadline.

Purchase of the RDA Properties may require assumption and assignment of the Harrison RDA.

g.  **Identity**: Each Bid must fully disclose the identity of each entity and each entity's shareholders, partners, investors, and ultimate controlling entities that will be bidding for or purchasing the applicable Debtor Properties or otherwise participating in connection with such Bid, and the complete terms of any such participation, along with sufficient evidence that the Potential Bidder is legally empowered to complete the transactions on the terms contemplated by the parties. Each Bid must also include contact information for the specific person(s) whom K&L Gates LLP or Forman Holt can contact regarding such Bid.

h.  **As-Is, Where-Is**: Each Bid must include a written acknowledgement and representation that the Potential Bidder: (i) has had an opportunity to conduct any and all due diligence prior to making its offer, with the exception that the Successful Bidder(s) as to non-RDA Properties may have thirty (30) days after execution of the PSA to conduct limited Environmental Due Diligence; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Debtor Properties in making its Bid; (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties

whatsoever, whether express, implied, by operation of law, or otherwise, regarding the completeness of any information provided in connection therewith, except as expressly stated in the Potential Bidder's proposed purchase agreement; and (iv) is otherwise willing to purchase the applicable Debtor Property, "as is, where is."

i.    **Authorization**: Each Bid must contain evidence that the Potential Bidder has obtained all necessary authorizations or approvals from its shareholders and/or its board of managers or directors, or any other internal and other approvals, as applicable, with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid.

j.    **Joint Bids**: The Debtors will be authorized to approve joint Bids in their reasonable business judgment, on a case-by-case basis, so long as a joint Bid meets the Qualified Bid requirements, and the applicable bidders otherwise comply with these Bidding Procedures.

   **Adequate Assurance of Future Performance**: Each Bid must (i) identify any executory contracts (the "Executory Contracts") and any unexpired leases (the "Unexpired Leases") to be assumed or assumed and assigned in connection with the proposed Sale Transaction, (ii) provide for the payment of all cure amounts (the "Cure Amounts") related to such Executory Contracts and Unexpired Leases by the Qualified Bidder, (iii) demonstrate that the Qualified Bidder can provide adequate assurance of future performance under all such Executory Contracts and Unexpired Leases sufficient to satisfy the requirements of sections 365(b)(3) and 365(f)(2)(B) of the Bankruptcy Code, and (iv) provide the legal name of the proposed assignee (the "Proposed Assignee") and any guarantors, as applicable; and (v) provide documentation as necessary to establish the foregoing,

k.    **Acknowledgement of Compliance with Bidding Procedures, Bidding Order, Bankruptcy Code, and Non-Bankruptcy Law**: Each Bid must acknowledge its compliance in all respects with these Bidding Procedures, the Bidding Procedures Order, Bankruptcy Code and any applicable non-bankruptcy law.

l.    **No Collusion**: The Potential Bidder must acknowledge in writing (a) that it has not engaged in any collusion with respect to any Bids or the Sale Transaction, specifying that it did not agree with any Potential Bidders or Potential Bidders to control price; and (b) agree not to engage in any collusion with respect to any Bids, the Auction, or the Sale Transaction. For the avoidance of doubt, this requirement does not restrict Potential Bidder(s) from working with other Potential Bidder(s) with the Debtors' prior written consent (email shall suffice), in consultation with the Consultation Parties.

m.    **Good Faith Offer**: The Bid must constitute a good faith, *bona fide* offer to consummate the Sale Transaction.

n.   **Irrevocable**: Each Bid must state that in the event such Bid is chosen as the Back-Up Bid (as defined below), it shall remain irrevocable until the Debtors and the Successful Bidder consummate the applicable Sale Transaction.

o.   **Back-Up Bid**: Each Bid shall state whether the Acceptable Bidder will serve as a Back-Up Bidder (as defined below) if the Acceptable Bidder's Bid is the next highest or otherwise best bid.

p.   **Expected Closing Date**: Each Bid must state the Potential Bidder's expected date of closing of the Sale Transaction, which proposed date must be consistent with the closing date set forth in the sale timeline portion of the Bidding Procedures.

q.   **Time Frame for Closing**: A Bid by a Potential Bidder must be reasonably likely to be consummated, if selected as the Successful Bid (as defined herein), within the time frame as set forth in the Bidding Procedures or as otherwise acceptable to the Debtors.

r.   **No Fees**: Except for any Expense Reimbursement and/or "break-up" fee as may be awarded by the Court to a designated Stalking Horse Bidder, each Potential Bidder presenting a Bid or Bids will bear its own costs and expenses (including legal fees) in connection with the proposed transaction, and by submitting its Bid(s) is agreeing to disclaim any right to receive a fee analogous to a Break-Up Fee, Expense Reimbursement, termination fee, or other similar form of compensation; *provided*, *however*, that parties entitled to payment or reimbursement of expenses under any DIP Order shall be entitled to payment or reimbursement of expenses incurred in connection with these Bidding Procedures and the matters contemplated hereby.

For the avoidance of doubt, unless submitted prior to the applicable Stalking Horse Deadline for consideration as a Stalking Horse Bid, and unless such bid is actually designated by the Debtors as a Stalking Horse Bid prior to the applicable Stalking Horse deadline, each Potential Bidder by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code.

s.   **Adherence to Bidding Procedures**: By submitting its Bid, each Potential Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction.

t.   **Consent to Jurisdiction**: The Potential Bidder must submit to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to the Debtors' qualification of Bids, to the Auction, the Sale, the Sale Transaction(s) and the construction and enforcement of these Bidding Procedures, any written indications of interest, Preliminary Bid Documents, the Bids, the Bid Documents, and any and all other agreements entered into in connection with any proposed Sale Transaction, and the closing of the Sale Transaction, as applicable; and

u.     **Conditions to Closing**: Each Bid must identify with particularity each and every condition to closing, including the Executory Contracts and Unexpired Leases for which assumption and assignment is required.

Only Bids fulfilling all of the preceding requirements contained in this section may, or otherwise in the Debtors' reasonable business judgment will be deemed to be "<u>Qualified Bids</u>," and only those parties submitting Qualified Bids may, at the Debtors' reasonable business judgment be deemed to be "<u>Qualified Bidders</u>"; *provided* that, notwithstanding anything to the contrary herein, any Bid submitted by any Agent or any Lender or their respective designees, shall be a Qualified Bid.

In the event that one or more Debtor(s) does, in fact, select a Stalking Horse Bidder for one or more Debtor Property, in order to be deemed a Qualified Bidder at the auction of said Property, an Acceptable Bidder must comply with all requirements for a Qualified Bid as set forth in this Article VI above, except for section (c).

Neither the Debtors nor any of their advisors are making or have at any time made any warranties or representations of any kind or character, express or implied, with respect to the Debtor Properties, including, but not limited to, any warranties or representations as to operating history or projections, valuation, governmental approvals, the compliance of the Debtor Properties with governmental laws, the truth, accuracy, or completeness of any documents related to the Debtor Properties, or any other information provided by or on behalf of the Debtors to a bidder, or any other matter or thing regarding the Debtor Properties. All bidders must acknowledge and agree that upon closing the Debtors shall sell and transfer to the Successful Bidder and the Successful Bidder shall accept the applicable Debtor Properties, except to the extent expressly provided in the Bankruptcy Court's order approving the Sale Transaction. Neither the Debtors nor any of their advisors will be liable for or bound by any express or implied warranties, guaranties, statements, representations, or information pertaining to the Debtor Properties or relating thereto that the Debtors, any advisor, or agent representing or purporting to represent the Debtors to whomever might have made or furnished, directly or indirectly, orally or in writing, unless (with respect to the Debtors only) specifically set forth in the Bankruptcy Court's order approving the Sale Transaction.

Within three (3) days after the applicable Bid Deadline, the Debtors shall determine which Potential Bidders are Qualified Bidders and will notify the Potential Bidders whether the Bids submitted constitute Qualified Bids or if the bidder is otherwise determined to be a Qualified Bidder, which will enable such Qualified Bidders to participate in the applicable Auction(s). Any Bid that is not deemed a Qualified Bid shall not be considered by the Debtors; *provided* that if the Debtors receive a Bid prior to the Bid Deadline that does not satisfy the requirements of a Qualified Bid, the Debtors may provide the Potential Bidder with the opportunity to remedy any deficiencies prior to the Auction.

The Debtors' obligations as to each Sale Transaction is contingent upon obtaining Court approval for each such Sale Transaction.

## VII.    Right to Credit Bid.

The Lenders are allowed to credit bid up to their allowed claim, their respective designees, nominees and/or assignees and any other Qualified Bidder who has a valid and perfected lien on any Debtor Properties (each a "<u>Secured Creditor</u>") shall have the right to credit bid all or a portion of the value of such Secured Creditor's claims within the meaning of section 363(k) of the Bankruptcy Code; ***provided that the Lenders and other Secured Creditor shall have the right to credit bid its claim only with respect to the collateral by which such Secured Creditor is secured.***

Any Credit Bid made by a Secured Creditor will be evaluated by the Debtors as a cash Bid solely for purposes of evaluating Bids (including evaluating Qualified Bids and subsequent Bids). Notwithstanding anything to the contrary contained herein or the Bidding Procedures Order, neither the Lenders, nor any of their respective assignees, nominees, or designees, as applicable, shall be subject to the requirements of Section VI hereof including the Good Faith Deposit requirement (whether for a Credit Bid or otherwise), are hereby deemed Qualified Bidders, and their Bids (including, for the avoidance of doubt, any Credit Bids) are hereby deemed Qualified Bids with respect to the Debtor Properties.

## VIII.    Obtaining Due Diligence Access.

Only Acceptable Bidders shall be eligible to receive due diligence information, access to the Debtors' electronic data room, and additional non-public information regarding the Debtors. ***No Acceptable Bidder will be permitted to conduct any due diligence without entry into a Confidentiality Agreement***. Beginning on the date the Debtors determine that a party is a Potential Bidder, or as soon as reasonably practicable thereafter, the Debtors will provide such Potential Bidder with access to an electronic data room and reasonable due diligence information, as requested by such Potential Bidder, as soon as reasonably practicable after such request. The Debtors shall promptly consult with their advisors (a) with respect to any due diligence disputes that arise concerning any Potential Bidder and (b) prior to revoking due diligence access to any such entity. The Debtors shall post substantially all written due diligence provided to any Potential Bidder to the Debtors' electronic data room for the benefit of all Potential Bidders. To the extent the Debtors provide any material written information to a Potential Bidder that the Debtors had not previously provided to a Consultation Party, the Debtors shall make such information available to such Consultation Party.

Potential Bidders will not, directly or indirectly, contact or initiate or engage in discussions in respect of matters relating to the Debtors or a potential transaction with any customer, supplier, or other contractual counterparty of the Debtors without the prior written consent of the Debtors. The due diligence period will end on the Bid Deadline and subsequent to the Bid Deadline the Debtors shall have no obligation to furnish any due diligence information.

In connection with the provision of due diligence information to Potential Bidders, the Debtors shall not furnish any confidential information relating to the Debtors or a potential transaction to any person except a Potential Bidder or such Potential Bidder's duly authorized representatives to the extent provided in an applicable Confidentiality Agreement.

The Debtors and their advisors shall coordinate all reasonable requests for additional information and due diligence access from Potential Bidders; *provided* that the Debtors may decline to provide such information to Potential Bidders who, in the Debtors' reasonable business judgment, in consultation with the Consultation Parties, have not established, or who have raised doubt, that such Potential Bidders intend in good faith to, or have the capacity to, consummate a Sale Transaction.

### A.    Communications with Potential Bidders (including Qualified Bidders).

Notwithstanding anything to the contrary in these Bidding Procedures, all substantive direct communications, including any diligence requests, with Potential Bidders (including any Qualified Bidders) shall be through Debtors' counsel or the Broker.

### B.    Due Diligence from Potential Bidders (including Qualified Bidders).

Each Potential Bidder shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors, regarding the ability of such Potential Bidder to consummate its contemplated transaction. Failure by a Potential Bidder to comply with such reasonable requests for additional information may be a basis for the Debtors, to determine that such bidder is no longer a Potential Bidder or that a Bid made by such bidder is not a Qualified Bid.

## IX.    Bid Deadline.

Binding Bids must be submitted in writing to the following parties (the "Bid Notice Parties") so as to be **actually received** no later than 5:00 p.m. (prevailing Eastern Time) on July 9, 2024 for the RDA Properties (the "RDA Bid Deadline"), and no later than 5:00 p.m. (prevailing Eastern Time) on July 16, 2024, for the Non-RDA Properties and the Sanford Road Property (the "Non-RDA Bid Deadline"):

(i)    proposed counsel to the Debtors, Forman Holt, 365 West Passaic Street, Suite 400, Rochelle Park, NJ, 07662, Attn: Michael Holt (mholt@formanlaw.com).

(ii)    proposed special counsel to the Debtors, K&L Gates LLP, 1085 Raymond Boulevard, 10th Floor, Newark, NJ 07102, Attn: Daniel M. Eliades (daniel.eliades@klgates.com).

(iii)    counsel for Lenders, Jerold C. Feuerstein, Esq. Kriss & Feuerstein, LLP, 360 Lexington Avenue, Suite 1200, New York, New York 10017 jfeuerstein@kandfllp.com

(iv)    the broker, Ben Shapiro, CBRE, Inc., Two Tower Center Boulevard 20th Floor, East Brunswick, NJ 08816, ben.shapiro@cbre.com

The Debtors may extend the RDA Bid Deadline or Non-RDA Bid Deadline for any reason whatsoever, in their reasonable business judgment for all or certain Acceptable Bidders.

X.     **Evaluation of Qualified Bids.**

The Debtors shall evaluate Qualified Bids and identify the Qualified Bid that is, in the Debtors' business judgment, and in consultation with the Consultation Parties,[5] the highest or otherwise best Qualified Bid or combination of Qualified Bids for any Debtor Property (the "Starting Bid"). The Debtors shall promptly provide to the Consultation Parties copies of all Bids received by the Debtors, including the Starting Bid, but in no event later than the next business day following receipt; *provided* that the Consultation Parties must treat such Bids and any related information as confidential and shall not publicly disclose such information without the written consent of the Debtors and the applicable bidder.

When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the Debtors may consider the following factors, in addition to any other factors that the Debtors, in consultation with the Consultation Parties, deem appropriate: (a) the amount and nature of the total consideration; (b) the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof; (c) the net economic effect of any changes to the value to be received by each of the Debtors' estates from the transaction contemplated by the Bid Documents including any cure costs associated with any assumption(s) of liabilities, executory contracts or unexpired leases; (d) the tax consequences of such Qualified Bid. Prior to commencing the Auction, the Debtors shall notify all Qualified Bidders as to which Qualified Bid is the Starting Bid for the Auction with respect to the applicable Debtor Property; and (e) any other factor or metric relevant to the evaluation of whether said Qualified Bid is in the best interest of the estate. At such time, the Debtors shall also distribute copies of the Starting Bid to the Consultation Parties and each Qualified Bidder.

XI.     **Auctions.**

Other than as expressly set forth herein, and unless the Debtors, after consultation with the Consultation Parties receive an offer of sufficient magnitude and elect to proceed with a direct sale of one or more Debtor Property(ies), if the Debtors receive more than one Qualified Bid for any particular Asset or portion of Debtor Properties by the RDA Bid Deadline or Non-RDA Deadline, the Debtors shall conduct the Auction to determine the Successful Bidder in their reasonable business judgment, in consultation with the Consultation Parties, with respect to such Debtor Property or portion of Debtor Properties. If the Debtors do not receive a Qualified Bid for any particular Debtor Properties by the RDA Bid Deadline or Non-RDA Bid Deadline, other than a credit bid, the Debtors will not conduct the Auction with respect to such Asset. If more than one Qualified Bid is received by the Bid Deadline with respect to the applicable Debtor Properties, then the Debtors shall conduct the Auction with respect to such Debtor Property(ies) in accordance with the Auction Procedures (as defined below).

---

[5] The term "Consultation Parties" shall mean the Lenders and any official committee of unsecured creditors appointed, if any, in these cases; *provided, however*, that to the extent any Lender submits a Bid for any Assets, such Lender shall not be a Consultation Party with respect to the evaluation and qualification of competing Bids for the Debtor Property included in the Lender's Bid or with respect to seeking and/or obtaining information about other Bids, but shall remain a Consultation Party for other purposes set forth in these Bidding Procedures.

The Auction for the RDA Properties shall commence on July 23, 2024, at 10:00 a.m. (prevailing Eastern Time), or such later time or other place as the Debtors determine in consultation with the Consultation Parties.

The Auction for the Non-RDA Properties shall commence on July 30, 2024, at 10:00 a.m. (prevailing Eastern Time), or such later time or other place as the Debtors determine in consultation with the Consultation Parties.

The Auctions will be conducted in accordance with the following procedures (the "Auction Procedures"):

a.     the Auction will be conducted openly (and Debtors and CBRE reserve the right to allow for virtual participation at the Auction);

b.     except as otherwise provided herein, only Qualified Bidders shall be entitled to bid at the Auctions;

c.     the Qualified Bidders must appear in person or through duly authorized representatives at the Auctions with authority to bind such Qualified Bidder as to any amount bid by such person or representative;

d.     bidding shall begin with the Starting Bid which may be a Stalking Horse Bid, if applicable;

e.     subsequent Bids (each, an "Overbid") may only be made at the Auction and any initial overbid must be sufficient to pay any stalking horse expense reimbursement and/or or "break-up" fee approved by the Court plus $100,000, and thereafter shall be at least a $100,000 increase in cash, cash equivalents, or other such consideration that the Debtors, in their reasonable business judgment, in consultation with the Consultation Parties, deem equivalent (including the right of a Secured Creditor to credit bid any remaining amount of its secured claims) over the previous Bid. The Debtors may, in their reasonable business judgment, in consultation with the Consultation Parties, announce increases or reductions to the Minimum Overbid at any time during the Auction. For the avoidance of doubt, each successive Bid that a Qualified Bidder may submit at the Auction must contain a Purchase Price in cash, cash equivalents, or such other consideration that the Debtors, in their reasonable business judgment, in consultation with the Consultation Parties, deem equivalent (including the right of a Secured Creditor to credit bid any remaining amount of its secured claims) that exceeds the then existing highest Bid by at least the amount of the Minimum Overbid;

f.     at the commencement of each Auction, the Debtors, in consultation with the Consultation Parties, may announce procedural and related rules governing the Auction, including time periods available to all Qualified Bidders to submit successive bid(s);

g.      each Qualified Bidder will be permitted a reasonable time to respond to previous Bids at the Auction, as determined by the Debtors in consultation with the Consultation Parties;

h.      during the course of each Auction, the Debtors shall, after submission of each Overbid, promptly inform each Qualified Bidder of the terms of the previous Bids and inform each Qualified Bidder which Overbid(s) reflect, in the Debtors' view, in consultation with the Consultation Parties, the highest or otherwise best bid(s) for the applicable Debtor Property;

i.      The Debtor(s) may, in their reasonable discretion, change the order of which Property(ies) are auctioned to facilitate comparison of bids for the entire Non-RDA Properties versus bids for less than all of the Non-RDA Properties.

j.      each Auction will be transcribed to ensure an accurate recording of the bidding at the Auction;

k.      each Qualified Bidder will be required to confirm on the record that it has not engaged, and will not engage, in any collusion with respect to the bidding or any Sale Transaction. For the avoidance of doubt, (a) this requirement does not restrict Qualified Bidder(s) from working with other Qualified Bidder(s) with the Debtors' prior written consent;

l.      each Qualified Bidder will be required to confirm that its Bid is a good faith, *bona fide* offer and it intends to consummate the Sale Transaction if selected as the Successful Bid or the Back-up Bidder in accordance with these Bidding Procedures (as may be modified in accordance herewith at each Auction);

m.      the Court and the Debtors will not consider Bids made after each Auction has been closed;

n.      the Debtors, in their reasonable business judgment, in consultation with the Consultation Parties, may reject, at any time before entry of an order of the Court approving a Successful Bid, any Bid that the Debtors determine is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the Sale Transaction, or (iii) contrary to the best interests of the Debtors, their estates, their creditors, and other stakeholders;

o.      the Debtors have the right to request any additional information that will allow the Debtors to make a reasonable determination as to a Qualified Bidder's financial and other capabilities to consummate the transactions contemplated by their proposal and any further information that the Debtors believe is reasonably necessary to clarify and evaluate any Bid made by a Qualified Bidder during the Auction;

p.      the Debtors reserve the right, in their reasonable business judgment, and in consultation with the Consultation Parties, to adjourn each Auction one or more

times to, among other things, (a) facilitate discussions between the Debtors and Qualified Bidders, (b) allow Qualified Bidders to consider how they wish to proceed, and (c) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, and in consultation with the Consultation Parties, may require that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing amount;

q.      notwithstanding anything herein to the contrary, the Debtors may, in consultation with the Consultation Parties, at any time choose to adjourn either Auction by announcement at the Auction. The Debtors shall promptly file notice of such adjournment with the Court; and

r.      Only the Debtors, the Consultation Parties, Qualified Bidders, the U.S. Trustee, and any other parties as the Debtors may determine to include in their reasonable discretion, in each case, along with the representatives and advisors, shall be entitled to attend the Auction, and only Qualified Bidders will be entitled to make Bids at the Auction.

For the avoidance of doubt, nothing in the Auction Procedures will prevent the Debtors from exercising their respective fiduciary duties under applicable law (as reasonably determined in good faith by the Debtors, in consultation with counsel).

Except as otherwise determined by the Debtors, in consultation with the Consultation Parties, only (i) the Debtors, (ii) the Consultation Parties, (iii) the Office of the United States Trustee, (iv) any statutory committee appointed in these Chapter 11 Cases, (v) any other Qualified Bidders, and (vi) the respective representatives and professionals of the foregoing parties shall be entitled to attend the Auction.

## XII.    Acceptance of the Successful Bid.

Each Auction shall continue until (i) there is only one Qualified Bid or a combination of Qualified Bids that the Debtors determine, in their reasonable business judgment and in a manner consistent with the exercise of their fiduciary duties and outlined below in further detail, and in consultation with the Consultation Parties, is the highest or otherwise best Bid to purchase the applicable Debtor Property(ies) (each, a "Successful Bid"), and (ii) the Debtors determine, in their reasonable business judgment, in consultation with the Consultation Parties, that further bidding is unlikely to result in a different Successful Bid or Successful Bids that would be reasonably acceptable to the Debtors, at which point, each Auction will be closed.

When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the Debtors, in consultation with the Consultation Parties, may consider the following factors in addition to any other factors that the Debtors deem appropriate: (a) the amount and nature of the total consideration, which includes but is not limited to, assumed liabilities (administrative liabilities, cure payments), and the amount of Executory Contracts and leased locations being assumed; (b) the likelihood of the Qualified Bidder's ability to close a transaction

and the timing thereof; (c) the net economic effect of any changes to the value to be received by each of the Debtors' estates from the transaction contemplated by the Bid Documents; and (d) the tax consequences of such Qualified Bid; and (e) any other consideration that may impact the Debtors' stakeholders.

Any Qualified Bidder that submits a Successful Bid will be deemed a "Successful Bidder" with respect to the Debtor Property(ies) contemplated for the purchase pursuant to such Successful Bid. The Debtors shall, within three (3) days of the conclusion of the applicable Auction, file notice identifying the Successful Bid and the Successful Bidder with the Court. Within thirteen (13) days of the conclusion of the Auction for the RDA Properties and within seven (7) days of the conclusion of the Auction(s) as to the non-RDA Properties, the designated Successful Bidder shall execute a binding purchase and sale agreement ("PSA") on the terms of the Successful Bid and consistent with the form PSA submitted by said Successful Bidder along with its Qualifying Bid. For the avoidance of doubt, the execution of the PSA shall deem the Debtors' selection of the Successful Bid final and, subject to the designation of the Back-Up Bid, the Debtors shall not solicit and /or accept any further Bids or offers to submit a Bid after such selection; *provided* that, notwithstanding anything to the contrary in these Bidding Procedures, nothing in these Bidding Procedures shall require the board of directors, board of managers, or such similar governing body of any Debtor to take or refrain from taking any action that the Debtors determined in good faith, in consultation with counsel, would be inconsistent with applicable law or its fiduciary obligations under applicable law.

Within one (1) business day of the selection of the Successful Bidder, such Successful Bidder shall make a cash deposit, in addition to its Good Faith Deposit, in an amount calculated on the basis of the increased aggregate purchase price, submitted by wire transfer of immediately available funds to an escrow account held by a title company identified by the Successful Bidder(s) and acceptable to the Debtors.

In the event a Lender is the Successful Bidder, Lender may assign its bid to its nominee, assignee or designee, at its sole discretion.

## XIII.    Designation of Back-Up Bidder.

The Back-Up Bid to purchase any applicable Debtor Property (the "Back-Up Bidder") will be determined by the Debtors at the conclusion of the Auction, in consultation with the Consultation Parties, and will be announced at that time to all the Qualified Bidders participating in the Auction. Following consultation with the Consultation Parties, the Debtors' selection of a Back-Up Bid shall be deemed final, and the Debtors shall not accept any further Bids or offers to submit a Bid after such selection. The Debtors will be authorized, but not required, to consummate the Sale Transaction with the Backup Bidder without further order of the Court, so long as such Back-Up Bid shall have been approved in connection with the Court's approval of the Successful Bid, or subject to Court approval if not.

If for any reason a Successful Bidder fails to consummate the purchase of such Debtor Property within the time permitted, then the Back-Up Bidder will automatically be deemed to have submitted the Successful Bid for such Debtor Property, and the Back-Up Bidder shall be deemed a Successful Bidder for such Debtor Property and shall be required to consummate any Sale

Transaction with the Debtors as soon as is reasonably practicable within the time frames as set forth herein without further order of the Court, upon 24 hours advance notice filed with the Court.

The Back-Up Bid shall remain open and irrevocable until the earliest to occur of (i) sixty (60) days after completion of the Auction, (ii) consummation of a Sale Transaction with one or more Successful Bidders at an Auction, and (iii) the release of such Back-Up Bid by the Debtors in writing (the "Back-Up Termination Date"). The Debtors shall return the Back-Up Bidder's deposit owed within five (5) business days of the Back-Up Termination Date.

If both the Successful Bidder and the Back-up Bidder fail to close on the purchase of a Property(ies), and if neither the Successful Bidder nor the Back-up Bidder are a Lender making a credit-bid, then, in the absence of an alternative transaction that would satisfy Lenders' Allowed Claim, the Debtors shall close a sale to the Lender on a credit-bid and each applicable order approving a Sale Transaction shall so provide.

**XIV.  Approval of the Sale Transaction.**

Within three (3) days after the execution of a PSA as to the RDA Properties and/or the 600 Guyon Property on a standalone basis, and within the later of (i) three (3) days after the execution of a PSA; or (ii) one (1) day after the conclusion of Environmental Due Diligence, if any, by the Successful Bidder(s) as to the Non-RDA Properties and/or the Sanford Property, the Debtors shall file the Sale Approval Request consisting of (A) a Certification with the Bankruptcy Court (i) identifying the Successful Bidder(s) as the proposed Purchaser(s) of the applicable Debtor Property(ies); (ii) attesting to the conclusion of any Environmental Due Diligence and that all contingencies and conditions precedent to the closing of the Sale Transaction have been satisfied; (iii) confirming that the Successful Bid was a Qualified Bid and satisfied all of the requirements of the Bidding Procedures approved by this Court; (iv) confirming that the proposed Sale Transaction meets all the criteria for approval under 11 U.S.C, § 363 and as otherwise set forth in the Bidding Procedures Order; and (v) memorializing the respective Debtors' determination that the proposed purchase represents the highest and best offer received, and manifests the most advantageous sale transaction(s) for the respective bankruptcy estate(s); and (B) a proposed form of Order approving the subject Sale Transaction(s). Said certification shall provide parties with a three (3) day period within which to file an objection to the proposed sale transaction and request that, in the absence of any filed objection, the Court enter an Order approving the proposed sale transaction at the conclusion of the objection period.

The Certification will further request that, in the event an objection is filed, responsive pleadings shall be filed by the Debtors within one (1) day after the filing of the Sale Objection and that the court schedule a hearing within five (5) days of any Sale Objection as to the RDA Properties and within three (3) days of any Sale Objection as to the non-RDA Properties. To the extent a Sale Hearing is conducted, the Debtors will seek certain findings from the Court regarding the Auction, including, among other things, that: (1) the Auction was conducted, and the Successful Bidder was selected, in accordance with the Bidding Procedures; (2) the Auction was fair in substance and procedure; (3) the Successful Bid was a Qualified Bid as defined in these Bidding Procedures; and (4) consummation of any Sale Transaction as contemplated by the Successful Bid in the Auction will provide the highest or otherwise best offer for the applicable Debtor Property and is in the best interests of the Debtors and their estates.

Each Successful Bidder and Back-up Bidder shall take reasonable steps to support the Debtors in obtaining approval of the respective Sale Transaction, including by filing an affidavit, affirmation or declaration (as appropriate) to satisfy the requirements of 11 U.S.C. § 363(m) and (n) including asserting its good faith and lack of collusion with respect to the sale of such Property, and the bidding and auction related thereto, within three (3) business days of the conclusion of the respective Auction.

## XV.    Reservation of Rights.

Debtors shall have the right, with the consent of the Consultation Parties, to alter the Sale Procedures based upon the circumstances and/or exigencies of a given situation. Debtors reserve the right to: (i) determine which bids are Qualifying Bids or which Potential Bidders are Qualified Bidders; (ii) determine which Qualifying Bid is the highest or otherwise best bid and which is the next highest or otherwise best bid; (iii) reject any bid that is (a) inadequate or insufficient, (b) not in conformity with these sales procedures, or the requirements of the Bankruptcy Code, or (c) contrary to the best interests of the Debtor; (iv) waive terms and conditions set forth herein with respect to Qualified Bids; (v) to select on or more Qualifying Bid(s) before the RDA Bid Deadline or Non-RDA Bid Deadline and move forward with a sale transaction without subjecting the applicable Property(ies) to auction; and (vi) withdraw any Debtor Property from the sale process to the extent that the proceeds of other approved Sale Transactions are sufficient to satisfy the Debtors' obligations to Lenders and to their other creditors in the Bankruptcy Cases.

**<u>Exhibit 2</u>**

**Auction Notice**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Forman Holt
365 West Passaic Street
Suite 400
Rochelle Park, NJ 07662
Telephone: (201) 857-7110
Facsimile: (201) 665-6650
Charles M. Forman, Esq. (CMF-8937)
Michael E. Holt, Esq. (MEH-8735)
*Proposed Counsel for the Debtors*

K&L Gates LLP
One Newark Center
1085 Raymond Boulevard, 10th Floor
Newark, NJ 07102
Telephone: (973) 848-4000
Facsimile: (973) 848-4001
Daniel M. Eliades, Esq. (DME-6203)
David S. Catuogno, Esq (DSC-1397)
William Waldman, Esq. (WLW-1452)
Caitlin C. Conklin, Esq. (CCC-5117)
*Special Counsel for the Debtors*

---

In re:

Supor Properties Enterprises LLC, *et al.*[1],

                          Debtors.

Case No. 24-13427 (SLM)
Judge: Hon. Stacey L. Meisel
Chapter 11

(Joint Administration Requested)

---

## NOTICE OF SALE BY AUCTION AND SALE HEARING

   **PLEASE TAKE NOTICE** that on [●], 2024, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered the Order *(I)(A) Approving the Auction and Bidding*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Supor Properties Enterprises LLC (5580); J Supor 136-1 Realty LLC (3205); Supor-172 Realty LLC (EIN No. 5662); Supor Properties Breiderhoft LLC (7258); Supor Properties Devon LLC (6357); Shore Properties Associates North LLC (6707); Supor Properties 600 Urban Renewal, LLC (8604); JS Realty Properties, LLC (2497); and Supor Properties Harrison Avenue, LLC (1728).

*Procedures, (B) Scheduling Bid Deadlines and an Auction, (C) Approving the Form and Manner of Notice Thereof, and (II)(A) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (B) Authorizing the Assumption and Assignment of Assumed Contracts, (C) Authorizing the Sale of Assets and (D) Granting Related Relief* [Docket No. [_____]] (the "<u>Bidding Procedures Order</u>")[2] in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>").

**PLEASE TAKE FURTHER NOTICE** that the Debtors are soliciting offers for the purchase of the RDA Properties / Non-RDA Properties[3] consistent with the bidding procedures (the "<u>Bidding Procedures</u>") approved by the Court pursuant to the Bidding Procedures Order. **<u>All interested bidders should carefully read the Bidding Procedures and Bidding Procedures Order.</u>** To the extent that there are any inconsistencies between this notice and the Bidding Procedures or Bidding Procedures Order, the Bidding Procedures or Bidding Procedures Order, as applicable, shall govern in all respects.

**PLEASE TAKE FURTHER NOTICE** that, if the Debtors receive qualified competing Bids for the RDA Properties/Non-RDA Properties within the requirements and time frame specified by the Bidding Procedures, the Debtors will conduct auctions (the "<u>Auctions</u>") of the RDA Properties **<u>on July 23, 2024, at 10:00 a.m. (prevailing Eastern Time</u>)** and of the Non-RDA Properties **<u>on July 30, 2024, at 10:00 a.m. (prevailing Eastern Time)</u>.**  Each Auction shall take place at K&L Gates LLP, 1085 Raymond Boulevard, 10th Floor, Newark, NJ 07102 (and Debtors and CBRE reserve the right to allow for virtual participation at the Auction).

**PLEASE TAKE FURTHER NOTICE** that only the Debtors, the Consultation Parties, Qualified Bidders, the U.S. Trustee, and any other parties as the Debtors may determine to include in their reasonable discretion, in each case, along with their representatives and advisors, shall be entitled to attend the Auction, and only Qualified Bidders will be entitled to make Overbids at the Auction. **All interested or potentially affected parties should carefully read the Bidding Procedures and the Bidding Procedures Order.**

**PLEASE TAKE FURTHER NOTICE** that the Debtors will seek approval of the Sale Transaction at a hearing scheduled to commence on or before **<u>X, 2024, at 11:00 a.m.  (prevailing Eastern Time)</u>** (the "<u>Sale Hearing</u>") before the Honorable Judge Meisel, or conducted consistent

---

[2] Capitalized terms used but not defined in this notice have the meanings given to them in the Bidding Procedures Order

[3] There is some question whether 600 Guyon Drive, Harrison NJ (lot 16.01 in block 150) (the "<u>600 Guyon Property</u>") is subject of or to the Harrison RDA. The Harrison Redevelopment Agency and the Town of Harrison (collectively, "<u>Harrison</u>") contend that the 600 Guyon Property is not subject of or to the Harrison RDA.  Debtors and Harrison reserve their respective rights on this issue.  For ease of reference only, and without prejudice to the rights or claims of Debtors and Harrison, the FER Property and 600 Guyon Property are collectively referred to as the "<u>RDA Properties</u>".

with the procedures established pursuant to the Court's standing orders regarding remote hearings in bankruptcy cases.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise set forth in the Order, objections to consummation or approval of the Sale and each Sale Transaction must (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual bases for the objection and the specific grounds therefor; and (d) be filed with the Court and served so as to be ***actually received* on or  before X, 2024, at 5:00 p.m. (prevailing Eastern Time)** by the following parties: (i) proposed counsel to the Debtors: Forman Holt, 365 West Passaic Street, Suite 400, Rochelle Park, NJ, 07662, Attn: Michael Holt; (ii) proposed  special counsel to the Debtors, K&L Gates LLP, 1085 Raymond Boulevard, 10th Floor, Newark, NJ 07102, Attn: Daniel M. Eliades; (iii) counsel for Lenders, Jerold C. Feuerstein, Esq. Kriss & Feuerstein, LLP, 360 Lexington Avenue, Suite 1200, New York, New York 10017; and (iv) Office of the United States Trustee for Region 3, District of New Jersey, Raymond Boulevard, Suite 2100, Newark, NJ 07102, Attn: Peter J. D'Auria, Esq.

## CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO THE SALE OR A SALE TRANSACTION, AS APPLICABLE, ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE APPLICABLE DEBTOR PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS MAY BE SET FORTH IN THE APPLICABLE PURCHASE AGREEMENT OR THE PLAN, AS APPLICABLE.**

Dated: April 22, 2024

By: */s/ DRAFT*  _____
Michael E. Holt
FORMAN HOLT
*Proposed Counsel for Debtors*


By: */s/ DRAFT*  _____
Daniel M. Eliades
K&L GATES LLP
*Proposed Special Counsel for Debtors*