## UNITED STATES BANKRUPTCY COURT

### DISTRICT OF NEW JERSEY

M.L. KING, JR. FEDERAL BUILDING
50 WALNUT ST., 3RD FLOOR
**NEWARK, NEW JERSEY 07102**
(973) 645-2464

Order Filed on September 8, 2025
by Clerk,
U.S. Bankruptcy Court
District of New Jersey

STACEY L. MEISEL
BANKRUPTCY JUDGE

<u>**NOT FOR PUBLICATION**</u>

September 8, 2025

<u>*Via CM/ECF Electronic Filing and E-Mail*</u>

David S. Catuogno
K&L Gates LLP
One Newark Center
10 Floor
Newark, New Jersey 07102
***Counsel for Debtors***

Michael E. Holt
Forman Holt
365 W. Passaic Street
Suite 400
Rochelle Park, New Jersey 07662
***Counsel for Debtors***

Andrew E. Anselmi
Anselmi & Carvelli, LLP
56 Headquarters Plaza
West Tower, Fifth Floor
Morristown, New Jersey 07960
***Counsel for Joseph Bezzone, Jr. and J. Bezzone, Inc.***

Marissa N. Kindberg
Anselmi & Carvelli, LLP
56 Headquarters Plaza
West Tower, Fifth Floor
Morristown, New Jersey 07960
***Counsel for Joseph Bezzone, Jr. and J. Bezzone, Inc.***

Page 2 of 27
September 8, 2025

**Re:    Supor Properties Enterprises LLC – Case No. 24-13427-SLM**
**        Decision Regarding Motion for Summary Judgment**

Dear Counsel:

The Debtors ask this Court to grant summary judgment on their *Motion To Disallow Proofs*

*Of Claims Filed By Joseph Bezzone, Jr. And J. Bezzone Inc. And For Related Relief*.  After further

briefing by the Debtors and the Claimants (collectively, the "**Parties**"), the Court heard oral

argument on June 23, 2025.  The Court must now determine whether the Debtors met their burden

for summary judgment.  For the reasons set forth below, the Court finds Debtors sufficiently

carried their burden and the claims must be disallowed.

**I.    JURISDICTION AND VENUE**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and 157(a)

and the Standing Order of Reference from the United States District Court for the District of New

Jersey dated July 23, 1984 and amended September 18, 2012.  This matter constitutes a core

proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (B) because this matter relates to the

administration of the estate and Debtors' Summary Judgment Motion asks this Court to disallow

certain claims against the Debtors' estates.

In each of the Proofs of Claim[1] filed by Claimants, Joseph Bezzone, Jr. and his company,

J. Bezzone, Inc. (collectively, "**Bezzone**" or "**Claimants**"), the Claimants stated:

> This Proof of Claim and any subsequent appearance, pleading,
> claim, or suit made of filed by Bezzone shall not be deemed to:
>
> • constitute a submission by Bezzone to the jurisdiction of the
>   Bankruptcy Court;

---

[1] The Court notes Bezzone filed an identical Proof of Claim in jointly administered cases. However, for consistency, the Court will only cite to the Proof of Claim filed in the lead bankruptcy case, Case No. 24-13427.

Page 3 of 27
September 8, 2025

- constitute consent by Bezzone to entry by the Bankruptcy Court of any final order in any non-core proceeding, which consent is hereby withheld unless expressly granted in the future with respect to a specific issue, matter, or proceeding;

- waive any substantive or procedural rights of Bezzone, including but not limited to (a) the right to challenge the constitutional authority of the Bankruptcy Court to enter a final order or judgment, or any order having the effect of a final order or judgment, on any matter . . . .

Case No. 24-13427, Claim 5-1, Part 2.  However, on November 8, 2024, the Court entered the

*Joint Order Scheduling Pretrial Proceedings for Contested Matter Under Fed. R. Bankr. P. 9014*

*Regarding Motion to Disallow Claims of Joseph Bezzone, Jr. and J. Bezzone Inc.*  (the "**Joint**

**Scheduling Order**").  ECF No. 318.  The Joint Scheduling Order states:

> The Parties consent to the Bankruptcy Court's adjudication and entry of a final judgment or order on the allowance or disallowance of the claims asserted in the Proofs of Claim (including any defenses that may be raised by the Debtors in opposition to such claims and counterclaims or affirmative claims asserted by any of the Debtors against Bezzone), unless specifically contested in pleadings which comply with Fed. R. Bankr. P. 7008 and Fed. R. Bankr. P. 7012. To the extent any Party hereto does not so consent, that Party must file a motion within 30 days of the entry of this Order seeking a determination as to whether this Court may adjudicate to a final judgment or order the allowance or disallowance of any or all claims contained in the Proofs of Claim . . . .

ECF No. 318.  The Parties jointly submitted the Joint Scheduling Order to the Court.  Further, the

Joint Scheduling Order supersedes the Proof of Claim and governs in this case because it contains

the Parties' express consent, it occurred after the Proof of Claim, it is an order of the Court, and it

required definitive action from any party that did not consent to the Court's jurisdiction.  *Compare*

*e.g.*, Case No. 24-13427, Claim 5-1, Part 2 *with* ECF No. 318.  The Claimants never filed a motion

seeking a determination as to whether the Court may adjudicate the claims contained in their Proofs

of Claim.  Accordingly, the Joint Scheduling Order demonstrates the Parties consented to the Court's jurisdiction to adjudicate this matter to final judgment.

Venue is proper under 28 U.S.C. § 1408.  Pursuant to Federal Rule of Bankruptcy Procedure 7052, the Court issues the following findings and conclusions of law.

## II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.  THE 2016 AND 2017 TERM SHEETS

In 2016, Bezzone began providing consulting services for Joseph Supor III ("**Mr. Supor**") regarding the potential redevelopment of certain properties owned or controlled by Mr. Supor, located in the town of Harrison (the "**RDA Properties**").  ECF No. 363-6, ¶ 19; ECF No. 395-1, ¶ 19.[2]  Bezzone's services were engaged, at the very least, to obtain redevelopment agreements from the town of Harrison for the RDA Properties.  *See* ECF No. 363-6, ¶ 19; ECF No. 395-1, ¶ 19.  On or about February 25, 2016, Bezzone drafted a term sheet for an initial operating agreement regarding the redevelopment.  ECF No. 363-6, ¶ 20; ECF No. 395-1, ¶ 20.  On March 3, 2016, Frank Mustilli, the Director of Finance and Chief Financial Officer of J. Supor & Son Trucking & Rigging Co., Inc., transmitted a revised version of the term sheet back to Bezzone (the "**March 2016 Term Sheet**").  ECF No. 363-6, ¶¶ 22–23; ECF No. 395-1, ¶¶ 22–23.  In the email, Frank Mustilli wrote, "I reviewed this document and made the edits that Mr. Supor requested in yesterday's meeting."  ECF No. 395-5.  Mr. Supor never signed the March 2016 Term Sheet.  ECF No. 363-6, ¶ 26; ECF No. 395-1, ¶ 26.

The March 2016 Term Sheet provides that J. Bezzone, Inc., E Sharp LLC (an unrelated third party whose principal is named Ed Walsh and not involved in this case) and Mr. Supor or his

---

[2] ECF No. 363-6 refers to Debtors' *Statement of Undisputed Facts Pursuant to D.N.J. LBR 7056-1* ("**Debtors' Statement of Undisputed Facts**"), and ECF No. 395-1 refers to *Claimant Joseph Bezzone, Jr.'s and J. Bezzone, Inc.'s Response to Debtors Statement of Undisputed Material Facts Pursuant to D.N.J. LBR 7056-1* ("**Bezzone's Statement of Undisputed Facts**").

affiliate were supposed to form a joint venture to develop property. ECF No. 395-5 at 4. Mr. Supor was supposed to own 90% of the joint venture for his contribution of all property to be developed, while Bezzone and Walsh would split 10% for their contribution of "sweat equity." *Id*. Proceeds from revenue profits or a capital event were to be distributed quarterly: first repaying any accrued loans; then a 90/10 split up to the approved value of the properties; next a 70/30 split on the next $1,000,000; and finally, a 60/40 on remaining proceeds. *Id*. at 5.

The Town of Harrison approved a redevelopment agreement in October of 2017 for certain RDA Properties (the "**RDA 1 Agreement**"). ECF No. 363-6, ¶ 36; ECF No. 395-1, ¶ 36. Subsequently, another proposed, non-binding term sheet was circulated between Mr. Supor and Bezzone (the "**October 2017 Term Sheet**"). ECF No. 363-6, ¶ 38; ECF No. 395-1, ¶ 38. Mr. Supor and Bezzone never executed a definitive agreement as contemplated under the October 2017 Term Sheet. ECF No. 363-6, ¶ 42; ECF No. 395-1, ¶ 42. The Town of Harrison later approved a second redevelopment agreement in March 2021 for certain other RDA Properties (the "**RDA 2 Agreement**"). *See* Claimants' admission in Case No. 24-13427, Claim 5-1, Part 2, ¶ 66 and throughout the hearing for Summary Judgment on June 23, 2025. To date, companies owned or controlled by Mr. Supor have paid Bezzone $540,000. ECF No. 363-6, ¶ 46; ECF No. 395-1, ¶ 46.

## B. THE SUPERIOR COURT ACTION

On July 13, 2021, Bezzone commenced litigation in the Superior Court of New Jersey, Law Division, Morris County under Docket No. MRS-L-001544-21 (the "**Superior Court Action**"). ECF No. 363-6, ¶ 43; ECF No. 395-1, ¶ 43. Bezzone sued the following parties: Joseph Supor; Supor Family Grantor Trust; Supor Marital Trust; JL Realty Property; Supor 136-1 LLC; J. Supor 136-1 Realty LLC; S&B Realty Co.; Supor-172 LLC; Supor Properties Enterprises LLC; Subel

Inc.; Supor-172 Realty LLC;  J. Supor & Son Trucking & Rigging Co. Inc.; Supor Rigging LLC;

Supor Heavy Haul LLC; Trucking Brokerage Services LLC; Supor Crane & Rigging LLC; Supor

Trucking LLC; JS Leasing LLC; John Does 1-10, and ABC CORPS. 1-10, (collectively, the

"**Superior Court Defendants**").  ECF No. 363-6, ¶ 43; ECF No. 395-1, ¶ 43.  Bezzone did not

sue Supor Properties 600 Urban Renewal LLC, ("**Supor 600**") and JS Realty Properties, LLC ("**JS**

**Realty**"), which were formed in 2019 and 2020, respectively.  *See* ECF No. 363-6, ¶¶ 35, 43; ECF

No. 395-1, ¶¶ 35, 43.

     The complaint filed in the Superior Court Action asserted several counts, including breach

of contract, quantum meruit, and unjust enrichment, all arising out of the March 2016 Term Sheet

(the "**Superior Court Complaint**").  ECF No. 363-6, ¶ 45; Case No. 24-13427, Claim 5-1, Part

2.  The Superior Court Complaint states, in part:

> According to the appraisal report of an accredited appraiser retained
> by Supor himself, the value of the NOG Property under RDA 1
> increased to $138,000,000. In addition to the substantial increase in
> value, Supor no longer faced the threat of having to sell the property
> long held by his family through an unjust eminent domain
> procedure. Under the agreement between Supor and Bezzone, **the**
> **approval of the new Redevelopment Plan and RDA 1 by itself**
> **triggered an obligation** by Supor to compensate Bezzone** in the
> amount of $13,800,000 (10% of the appraised value).
>
> However, following the remarkable RDA 1 victory, and as the value
> of the NOG Property redevelopment project was becoming clearer,
> Supor refused to honor his obligations and compensate Bezzone.

Case No. 24-13427, Claim 5-1, Part 2, ¶¶ 47–48 (emphasis added).  The Superior Court Defendants

filed an answer on March 10, 2022, which generally denied the allegations set forth in Superior

Court Complaint.  *Id.*

     The Superior Court Defendants filed two motions to dismiss the Superior Court Complaint.

ECF Nos. 395-17, 395-19.  On February 18, 2022, the Superior Court entered an order denying

the first motion to dismiss, finding, in part, that the statute of limitations had not run on Bezzone's

causes of action (the "**First Superior Court Order**").  ECF No. 395-17.

On December 16, 2022, the Superior Court entered an order denying both the Superior

Court Defendants' second motion to dismiss and their motion to quash third-party subpoenas (the

**"Second Superior Court Order"**).  ECF No. 395-19.  The Second Superior Court Order declined

to determine the existence or validity of an alleged indemnification agreement between the parties.

*Id*.  However, despite the Superior Court denying the motions to dismiss, on September 20, 2023,

Bezzone voluntarily by stipulation dismissed the Superior Court Complaint without prejudice (the

"**Stipulation of Dismissal**").  ECF No. 363-6, ¶ 48; ECF No. 395-1 ¶ 48.

### C.  THE BANKRUPTCY CASE

On April 2, 2024, (the "**Petition Date**") Supor Properties Enterprises LLC, J Supor 136-1

Realty LLC, Supor-172 Realty LLC, Supor Properties Breiderhoft LLC, Supor Properties Devon

LLC, Shore Properties Associates North LLC, Supor 600, JS Realty, and Supor Properties Harrison

Avenue LLC (collectively the "**Debtors**"[3]) filed voluntary petitions for relief (the "**Petition**")

under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").  ECF No. 1.

Supor 600 and JS Realty were formed in 2019 and 2020, respectively.  ECF No. 363-6, ¶ 35; ECF

No. 395-1, ¶ 35.  On April 8, 2024, the Court entered an *Order Granting Motion For Joint*

*Administration Lead Case*, allowing the Debtors' cases to be jointly administered, and establishing

Supor Properties Enterprises, LLC as the lead case.  ECF No. 35.

---

[3] Notably, Bezzone did not include Supor 600 or JS Realty as defendants in the Superior Court Action, even though
both entities were formed before Bezzone filed the Superior Court Complaint.  However, Bezzone filed claims against
both Debtors.  *See* 24-13423, Claim 2-1.

Page 8 of 27
September 8, 2025

### D.  BEZZONE'S PROOFS OF CLAIM

On April 4, 2024, the Clerk's Office issued a *Notice of Chapter 11 Bankruptcy Case*, which

set a June 11, 2024 deadline for general unsecured creditors to file proofs of claims in the Debtors'

cases.  ECF No. 21.  On June 10, 2024, Bezzone filed the following identical proofs of claims in

five of the Debtors' cases (the "**POCs**"):[4]

| Claim No. | Case No. | Case Name | Claim Amount |
|---|---|---|---|
| 5-1 | 24-13427 | Supor Properties Enterprises LLC | $27,032,310 |
| 4-1 | 24-13428 | J Supor 136-1 Realty LLC | $27,032,310 |
| 4-1 | 24-13429 | Supor-172 Realty LLC | $27,032,310 |
| 2-1 | 24-13433 | Supor Properties 600 Urban Renewal LLC | $27,032,310 |
| 2-1 | 24-13434 | JS Realty Properties, LLC | $27,032,310 |

Bezzone asserts entitlement to 10% of the value of the RDA Properties in addition to outstanding

fees for other Supor-related projects.  ECF No. 395-1, ¶ 62.  In the POCs, Bezzone asserts:

> [T]he parties reached an agreement that provided that Bezzone
> would personally lead the redevelopment efforts…and…would be
> compensated in an amount equal to ten percent (10%) of each the
> following elements: (a) the "approved" land value, as determined by
> a third-party appraisal **(payable upon the approval of the
> Redevelopment Plan by the Town)**; (b) any developer fee, as
> determined by future project cost; and (c) any future cash flow
> received by Supor, determined by future capital events (such as
> rental income, refinance capital, or sale proceeds).

Case No. 24-13423, Claim 5-1, Part 2 (emphasis added).  The POCs state that Bezzone's

redevelopment efforts resulted in a $200 million increase in value to the RDA Properties, thus

entitling Bezzone to $20 million, or 10% of the approved value.  *Id*.  Bezzone asserts the increases

were twice confirmed by Mr. Supor's third-party, accredited appraisals.  *Id.*  The POCs also allege

an entitlement to $235,000 for outstanding monthly fees and compensation in the amount of

---

[4] Bezzone admits the POCs are identical and that, while Bezzone filed the duplicated claim in five cases, they are only
seeking payment of a singular claim.

$6,797,310.  *Id.*  Bezzone only attaches the Superior Court Complaint and Stipulation of Dismissal as supporting documents to the POCs.  *Id*.

On June 24, 2024, the Debtors filed *Motion to Disallow Proofs of Claims Filed by Joseph Bezzone, Jr. and J. Bezzone Inc., and for Related Relief* (the "**Motion to Disallow**").  ECF No. 155.  In the Motion to Disallow, Debtors argue the POCs should be disallowed pursuant to Section 502(b) of the Bankruptcy Code.  *Id*. at ¶¶ 10–14.  Debtors also assert, to the extent Bezzone believes they have a claim against the Debtors, those claims are disputed, contingent, and unliquidated.  *Id.* at ¶ 6.  Debtors further contend that Bezzone's claims should be disallowed because Bezzone failed to provide any documentary evidence to support their POCs, submitting only a copy of the disputed and unsubstantiated Superior Court Complaint.  *Id.* at ¶¶ 1, 13.

On September 4, 2024, Bezzone filed *Creditor Joseph Bezzone, Jr. and J. Bezzone, Inc.'s Memorandum of Law in Opposition to Debtor's Motion to Disallow Proof of Claims* (the "**Objection to the Motion to Disallow**").  ECF No. 219.  Bezzone objects to the Motion to Disallow for primarily three reasons: (1) the Debtors cannot identify a basis for their objection under Section 502; (2) under the burden-shifting provisions set forth in *In re Allegheny Int'l, Inc.*, the Debtors failed to overcome the *prima facie* validity of Bezzone's claim; and (3) the Superior Court already decided the issue raised in the Debtors' objection—that Bezzone established enough factual detail and evidence to support their contract based claims—and therefore, *res judicata* bars this Court from relitigating the issue.  *Id.*

On October 7, 2024, the Court confirmed the Debtors' Chapter 11 plan of reorganization.  ECF No. 280.  On October 11, 2024, the parties filed a *Status Change Form* indicating that the

Page 10 of 27
September 8, 2025

Motion to Disallow Claims had been settled and the parties would submit a joint scheduling order.[5]

ECF No. 287.  On November 8, 2024, this Court entered the *Joint Scheduling Order*.  ECF No.

318.  The parties never filed any pleadings demonstrating a settlement occurred.  Instead, this

motion followed.

### E.  THE FAILED RDA PROPERTIES SALE

On August 15, 2024, Supor Properties Enterprises, LLC, J Supor 136-1 Realty LLC, and

Supor-172 Realty LLC entered into a Purchase and Sale Agreement to sell the RDA Properties to

H Capital Holdings, LLC for $48,000,000, which is substantially less than the appraisals later

produced by Bezzone.  ECF No. 195, Exhibit A.  On October 7, 2024, this Court entered an *Order*

*(I) Approving the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests,*

*(II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired*

*Leases, and (III) Granting Related Relief* (the "**Sale Order**").  ECF No. 279.  The Sale Order

authorized the sale of the RDA Properties to H Capital Holdings, LLC for the purchase price of

$48,000,000.  *Id*.  The sale of the RDA Properties to H Capital Holdings, LLC has not yet closed.

ECF No. 363-1, ¶ 38.  The Debtors filed an adversary proceeding against H Capital Holdings, LLC

and others because the sale failed to close.  ECF No. 419.

### F.  THE SUMMARY JUDGMENT MOTION

On March 17, 2025, the Debtors filed a *Motion for Summary Judgment Disallowing Proofs*

*of Claim Filed By Joseph Bezzone, Jr. and J. Bezzone, Inc.* (the "**Summary Judgment Motion**").

ECF No. 363.  The Summary Judgment Motion raises several issues with the POCs.

---

[5] Confusingly, the parties marked the *Status Change Form* as settled, but also indicated they would file a joint
scheduling order.  Typically, a settlement resolves the entire dispute.  However, the Parties never consummated a
settlement.

Page 11 of 27
September 8, 2025

First, the Debtors argue the alleged oral agreement arising from the March 2016 Term Sheet violates New Jersey's statute of frauds because Mr. Supor never signed it.  ECF No. 363-1, ¶¶ 44, 47.  The Debtors allege that Bezzone asserts a claim for a property interest.  *Id*. at ¶ 46.  The Debtors assert that New Jersey law requires transactions to transfer a property interest be memorialized in a descriptive writing signed by or on behalf of the transferor to be enforceable.  *Id*. at ¶¶ 44–47.  Accordingly, the Debtors argue, the March 2016 Term Sheet is not enforceable.  *Id*. at ¶ 47.

Second, the Debtors argue Bezzone's contractual claims are time-barred.  ECF No. 363-1, ¶ 52.  The Debtors cite to *N.J.S.A.* 2A:14-1, which requires that actions for recovery on an express or implied contractual claim or liability must be commenced within six years after the cause of action accrued.  ECF No. 363-1, ¶ 53.  The Debtors quote the Superior Court Complaint, which states that the approval of the RDA 1 Agreement in October 2017 "by itself triggered an obligation by Supor to compensate Bezzone in the amount of $13,800,000 (10% of the appraised value)."  *Id.* at ¶ 55 (quoting Case No. 24-13423, Claim 5-1, Part 2).  The Debtors argue that if Bezzone's right to be compensated was triggered in October of 2017, then his contractual claim for recovery is more than six years old.  *Id*. at ¶¶ 56–57.  Accordingly, Debtors argue, any contractual claim included in the POCs is time-barred, entitling them to summary judgment.  *Id*. at ¶ 58.

Third, the Debtors argue that no valid contract exists between Bezzone and the Debtors.  The Debtors assert that under New Jersey law, a valid contract requires mutual assent and an intent to be bound.  *Id.* at ¶ 59.  Here, Debtors argue Mr. Supor never signed the March 2016 Term Sheet and none of the Debtors were listed as a party therein.  *Id*. at ¶ 60.  In fact, Debtors note some of the Debtors were not formed until three to four years after the March 2016 Term Sheet was drafted.  *Id*.  Debtors argue, "[a]n entity cannot be a party to a contract that predates its existence."  *Id.* at ¶

65.  Debtors assert that Supor 600 and JS Realty could not be liable on a contract that was executed before their formation.  *Id.* at ¶ 66.  Additionally, Debtors contend they are not liable to compensate Bezzone for work performed on unrelated, non-Debtor-owned properties.  *Id.* at ¶¶ 67–70. Debtors further argue: (1) the March 2016 and October 2017 Term Sheets lack essential terms (*e.g.*, specificity and obligated parties), and the October 2017 Term Sheet is both explicitly non-binding and contingent on an unexecuted agreement; (2) ongoing negotiations confirm no final agreement or meeting of the minds; and (3) the POCs provide no credible evidence or calculations for these unrelated claims.  *Id.* at ¶¶ 71–79.

Fourth, Debtors argue the POCs should be disallowed because they lack sufficient factual or evidentiary support to establish liability.  Per Debtors, a valid proof of claim requires allegations of facts demonstrating the debtor's legal obligation.  *Id.* at ¶ 79.  The POCs merely assert unsubstantiated amounts.  *Id.* at ¶ 82.  Debtors argue that once they rebutted any *prima facie* validity, Bezzone bore the burden to prove its claims by a preponderance of evidence, which they failed to do.  *Id.* at ¶¶ 80–82. According to Debtors, the POCs provide no documentation, calculations, or legal basis for the claimed amounts.  *Id.* at ¶¶ 82–84.

Fifth and finally, the Debtors allege that on or about July 29, 2022, J. Bezzone, Inc. executed a contract stating "Bezzone will drop all prior legal claims on Supor upon signing this document, effective immediately. The parties agree to indemnify each other moving forward except for a breach of this Contract."  ECF No. 363-1, ¶ 85.  The Debtors argue this contract releases Bezzone's claims asserted in the POCs.  *Id.* at ¶ 86.

## G.  BEZZONE'S RESPONSE TO THE SUMMARY JUDGMENT MOTION

On May 27, 2025, Bezzone filed an *Opposition to Debtors' Motion for Summary Judgment*, asking the Court to deny the Summary Judgment Motion and allow the case to proceed to trial (the

**"Response"**).  ECF No. 395.  In the Response, Bezzone asserts that genuine disputes of material fact preclude summary judgment, including issues related to the statute of frauds, the validity of a purported settlement agreement, and the liability of all Debtors under alter ego and implied contract theories.  *Id.*  The Response also highlights the Superior Court's prior rulings rejecting Debtors' arguments and emphasizing the existence of factual conflicts that require resolution at trial.  *Id.*

First, Bezzone asserts the statute of frauds does not apply because Parties' agreement was for payment for services rendered, not a transfer of real estate.  ECF No. 395 at ¶¶ 31–39.  Bezzone asserts that the Superior Court already rejected this argument, holding that the March 2016 Term Sheet reflected a valid agreement for services, not real property interests.  *Id.* at ¶¶ 38–40.  Finally, Bezzone argues, even if the statute of frauds applied, Bezzone could enforce the agreement under promissory estoppel due to detrimental reliance.  *Id.* at ¶¶ 41–44.

Second, Bezzone argues the alleged July 2022 indemnification agreement is a fabrication, unilaterally executed and modified by Supor once it became obvious that discovery was going to proceed.  *Id.* at ¶¶ 45–47.  Bezzone notes that, here too, the Superior Court already decided this issue by finding a "material and factual dispute" exists regarding the agreement's validity.  *Id.* at ¶ 48.

Third, Bezzone argues that Debtors' corporate form is a "sham" due to commingled funds, shared management, and undercapitalization, and that Debtors' own admissions (*e.g.*, joint tax returns and intercompany loans) justify piercing the corporate veil.  *Id.* at ¶¶ 64–69.  Bezzone argues even if JS Realty and Supor 600 were formed after the March 2016 Term Sheet was drafted,

Page 14 of 27
September 8, 2025

Bezzone's work on the Panasonic Property and the RDA 2 Agreement created implied agreements.[6] *Id.* at ¶¶ 51–63.

Fourth, Bezzone argues the claims are not barred by the statute of limitations because the Debtors' obligation to pay Bezzone arose upon the approval of the RDA 2 Agreement in 2021. *Id.* at ¶¶ 70–76. Bezzone alleges the Debtors initially told Bezzone he would be paid upon approval of the RDA 1 Agreement. *Id.* at ¶ 70. However, the Debtors began to shift the goalposts, first promising payment upon Bezzone's successful negotiations in other projects, and later upon the approval of the RDA 2 Agreement. *Id.* at ¶¶ 70–71. Bezzone asserts that in March 2021, the RDA 2 Agreement was approved, and the $200,000,000 appraisal was obtained. *Id.* at ¶ 75. Accordingly, Bezzone argues the bulk of their claim arose in 2021, which is within the six-year statute of limitations period. *Id.* at ¶ 76.

Fifth and finally, Bezzone argues that there are genuine issues of material fact regarding: (1) the existence/scope of the Parties' agreement; (2) the legitimacy of the July 2022 settlement; and (3) whether Debtors ratified Bezzone's work through conduct (*e.g.*, using Bezzone's renderings for financing). *Id.* at ¶¶ 32–39, 45–48, 55–57. Bezzone asserts summary judgment is premature because the disputed facts and credibility issues require a trial. *Id.* at 2.

The Response repeats the assertion from the Superior Court Complaint that the RDA 1 Agreement triggered an obligation for Mr. Supor to compensate Bezzone:

> 4. In October 2017, after months of effort, a Redevelopment Plan and corresponding Redeveloper Agreement ("RDA 1") was approved by the Town of Harrison. An accredited appraiser valued the property under RDA 1 to an increased value of $138,000.
>
> 5. **Despite this success, Supor refused to honor his obligations and compensate Bezzone.** Instead, Supor moved the goal-posts and

---

[6] Again, Bezzone never sued either JS Realty or Supor 600 in the State Court Action or the Bankruptcy cases, nor did Bezzone file any complaint asserting a cause of action for piercing the corporate veil.

> asked Bezzone to lead an industry-wide Request for Proposals
> process, using his own personal and professional contacts.

*Id.* at ¶¶ 4–5 (internal citation omitted) (emphasis added).  Bezzone emphatically repeats that

assertion in Bezzone's Statement of Undisputed Facts:

> 37. Admitted only that the **approval of the first Redevelopment
> Agreement <u>triggered an obligation</u> by Supor to compensate
> Bezzone under their original agreement**. Denied insofar as Supor
> continuously modified the terms for Bezzone to get paid.

ECF No. 395-1, ¶ 37 (emphasis added).  Bezzone repeats the contention again in the *Declaration*

*of Joseph Bezzone, Jr* ("**Bezzone's Declaration**"):

> However, following the remarkable RDA 1 victory, and as the
> significant, increased value of the NOG Property redevelopment
> project was becoming clearer, Supor refused to honor his obligations
> and compensate me.

ECF No. 395-3, ¶ 18.

### H.  THE DEBTORS' REPLY

On June 10, 2025, the Debtors filed a *Memorandum of Law in Reply to Opposition of*

*Joseph Bezzone, Jr. and J. Bezzone, Inc. to Debtors' Motion for Summary Judgment on Motion to*

*Disallow* (the "**Debtors' Reply**").  ECF No. 407.  Much of the Debtors' Reply recites arguments

previously made by the Debtors.  The Court will only discuss the Debtors' new and responsive

arguments.  The Debtors argue that Bezzone failed to establish the existence of a fully formed and

enforceable agreement.  *Id*.  While Bezzone bases the right to recovery on the March 2016 Term

Sheet, that document only stated that the parties would form a joint venture, which Bezzone would

share in a 10% interest with Ed Walsh.  *Id*.  The Debtors assert that no such joint venture was ever

formed.  *Id*.

Debtors dispute Bezzone's new assertion that the RDA 2 Agreement in March 2021

triggered liability for statute of limitations purposes.  *Id*.  The Debtors additionally argue that

Bezzone failed to show any entitlement to recovery from JS Realty, which has no affiliation to, and does not own, any RDA Properties.  *Id*.

## I.   THE SUMMARY JUDGMENT HEARING

On June 23, 2025, the Court held oral argument on the Summary Judgment Motion (the "**Summary Judgment Hearing**").[7]   At the Summary Judgment Hearing, the Debtors argued Bezzone failed to provide supporting evidence sufficient to create genuine issues of fact to defeat summary judgment.  The Debtors argued the POCs are time-barred because Bezzone's causes of action accrued in October 2017 when the Town of Harrison approved the RDA 1 Agreement.  The Debtors asserted Bezzone used October 2017 as the accrual date in the Superior Court Complaint by asserting that approval of the RDA 1 Agreement, by itself, triggered an obligation to pay Bezzone under the alleged oral contract.  The Debtors contended that Bezzone repeatedly used the RDA 1 Agreement approval date as the accrual date in the POCs and also in Mr. Bezzone's Declaration.  The Debtors argued New Jersey's statute of limitations for a contract action is six years.  The Debtors asserted that, by Bezzone's own admissions, the causes of action accrued more than six years before the Petition Date.   The Debtors contended that Bezzone was trying to rewrite history by asserting the accrual date was the approval date of the RDA 2 Agreement in March 2021.  The Debtors argued that while the approval of the RDA 2 Agreement may have recalculated Bezzone's alleged damages, it would not alter the accrual date, which Bezzone already admitted was triggered in October 2017.

Alternatively, the Debtors argued that if the POCs are not time barred, then the POCs against JS Realty and Supor 600 should be disallowed because neither entity existed when any

---

[7] Bezzone raised *res judicata* concerns in the Objection to the Motion to Disallow but chose not to pursue it in their arguments at the Summary Judgment Hearing, despite being given an opportunity to do so by the Court.

Page 17 of 27
September 8, 2025

alleged oral contract was formed.  The Debtors further argued the $6.7 million amount in the POCs

should be disallowed because that amount was for unrelated work Bezzone allegedly performed

on non-debtor properties.

At the Summary Judgment Hearing, Bezzone argued summary judgment should be denied

because the course of dealing between the parties creates a genuine dispute of material facts.  On

the statute of limitations issue, Bezzone disputed the Debtors' argument that the accrual date for

the statute of limitations occurred in October 2017.  Bezzone argued the accrual date occurred in

March 2021, when Bezzone obtained an appraisal following approval of the RDA 2 Agreement.

Bezzone suggested they were not pursuing 10% of the appraised value of the RDA 1 Agreement,

but rather 10% of the later appraised value after the RDA 2 Agreement.  Bezzone argued neither

the RDA 1 Agreement nor the first appraisal were the triggering events because the parties were

working towards the ultimate goal of the RDA 2 Agreement.  Bezzone also asserted the RDA 2

Agreement was also not a triggering event because there is no cause of action until the amount due

is determined.

For clarification, the Court asked whether there was a breach as of the first appraisal on

November 1, 2019.  Bezzone responded that there was no breach because Mr. Supor asked Mr.

Bezzone to "hold off" and work together toward the RDA 2 Agreement.  The Court then posed the

following hypothetical to Bezzone:

> You have a car accident.  The day of the car accident[,] the damage
> occurs.  When I say the damage, the injury occurs.  The statute of
> limitations starts to run.  The damages come later because we don't
> know what happened to this plaintiff, this person that was injured.
> And so they start to accumulate.  Why is this different where the
> actual issuance of the RDA-1 wasn't the car accident?[8]

---

[8] The Court is aware that the hypothetical relates to a personal injury scenario and not a contract claim. But, its
purpose is to exemplify accrual date and nothing more.

Page 18 of 27
September 8, 2025

Summ. J. Hr'g Tr., 30:23–25; 31:1–4, June 23, 2025.  Bezzone responded:

> It's different, Your Honor, because even using your analogy, if after
> that time the perpetrator makes an agreement with the injured and
> says hey, I promise to pay you, let's do this other thing. Well maybe
> that contract…is modified, maybe you're going to quantum meruit,
> but now I have a new contract. It's a new agreement.

Summ. J. Hr'g Tr., 31:5–12, June 23, 2025.  Simply, Bezzone discounted that the car accident was

the day the statute of limitations started to run.  Instead, Bezzone suggested the statute of

limitations would run after the parties made a definitive deal on the damages.  Bezzone argued that

the appraisal following the RDA 2 Agreement is the triggering event because the March 2016

Term Sheet required 10% of the appraised value of the property.  Accordingly, Bezzone argued

their right to compensation would only arise once 10% of the appraised value was determined.

　　　In response, the Debtors argued the March 2016 Term Sheet did not mention appraised

value, and even so, the appraisal would only serve to quantify damages.  Per Debtors, neither the

appraisal, nor any of Bezzone's factual arguments, altered the accrual date.

## III.    DISCUSSION

### A.  THE BEZZONE CLAIMS ARE TIME BARRED

#### 1.  Summary Judgment Standard

　　　Federal Rule of Civil Procedure 56(a), made applicable to bankruptcy proceedings through

Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment will only be granted

if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056.  A fact is material if it "might affect

the outcome of the suit under the governing law." *Razak v. Uber Techs., Inc.,* 951 F.3d 137, 144

(3d Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  An issue of

material fact is considered "genuine" if the "evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *Razak*, 951 F.3d at 144 (quoting *Anderson*, 477 U.S. at 248).

"[A] motion for summary judgment will not be defeated by the mere existence of some disputed

facts" and summary judgment "may be proper even though some material facts remain disputed

if, after all inferences are drawn in favor of the non-moving party, the moving party is entitled to

judgment as a matter of law." *In re Heidt*, 656 B.R. 10, 57 (Bankr. D.N.J. 2023) (internal quotation

marks omitted).

The court must construe facts and inferences in a light most favorable to the non-moving

party. *See Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018). To survive summary

judgment, the non-moving party "must point to specific factual evidence showing that there is a

genuine dispute on a material issue requiring resolution at trial." *Cranmer v. Harleysville Ins. Co.,*

719 F. App'x 95, 98 (3d Cir. 2017) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

Suspicions, conclusory allegations, and bare assertions will not satisfy the non-movant's burden.

*See Jutrowski*, 904 F.3d at 288–89. The court may only consider evidence that would be

admissible at trial. *See Williams v. Borough of West Chester, Pa*., 891 F.2d 458, 471 (3d Cir.

1989). "[E]vidence whose foundation is deficient must be excluded from consideration."

*Williams,* 891 F.2d at 471.

Where, as here, a "Debtor raise[s] the statute of limitations as a defense" and "also has

made the motion for summary judgment," then "the burden of proving that no genuine issue of

material fact exists and that as a matter of law the statute of limitations has run rests with the

Debtor." *In re Tripp*, 189 B.R. 29, 34 (Bankr. N.D.N.Y. 1995).

## 2. Proofs of Claim Are *Prima Facie* Valid Unless Unenforceable Under State Law

Section 502 of the Bankruptcy Code governs the allowance of claims or interests in a

bankruptcy case. *See* 11 U.S.C. § 502. A proof of claim "is deemed allowed, unless a party in

interest, including a debtor objects." *In re Bennett*, 528 B.R. 273, 282 (Bankr. E.D. Pa. 2015)

(citing 11 U.S.C. § 502(a)) (cleaned up).  Bankruptcy Rule 3001 states that a properly executed

claim "constitutes prima facie evidence of the validity and amount of the claim." Fed. R. Bankr.

P. 3001(f).  A creditor's proof of claim will be *prima facie* valid if it "alleges facts sufficient to

support a legal liability to the claimant." *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir.

1992).  To overcome *prima facie* validity, the objecting party must "produce evidence sufficient

to negate the *prima facie* validity of the filed claim." *Id.* at 173.  The objecting party must present

sufficient evidence to negate any essential portion of the claim.  *See Id*. at 173–74 ("[T]he objector

must produce evidence, which if believed, would refute at least one of the allegations that is

essential to the claim's legal sufficiency."); *see also In re Energy Future Holdings Corp.*, 785 F.

App'x 945, 946 n.4 (3d Cir. 2019) (same).  If the objecting party satisfies their burden, the burden

then shifts "to the claimant to prove the validity of the claim by a preponderance of the evidence."

*Allegheny Int'l, Inc.*, 954 F.2d at 174.

When the debtor or a party in interest objects to a proof of claim, Section 502(b)(1) states

that, after notice and a hearing, the court shall allow the claim for the amount determined unless

the "claim is unenforceable against the debtor and the property of the debtor, under any agreement

or applicable law for a reason other than because such claim is contingent or unmatured."  11

U.S.C. § 502(b)(1).  Bankruptcy Rule 3001(c) requires that a proof of claim based upon a writing

include an attached copy of that writing.  Fed. R. Bankr. P. 3001(c)(1).

Section 502 relies upon non-bankruptcy law to determine whether claims are enforceable

for bankruptcy purposes.  *See In re G-I Holdings, Inc.*, 443 B.R. 645, 663 (Bankr. D.N.J. 2010),

*opinion clarified*, 472 B.R. 263 (Bankr. D.N.J. 2012) (citing *In re Combustion Engineering, Inc.*,

391 F.3d 190, 245, n. 66 (3d Cir. 2005) (citing 4 Collier on Bankruptcy ¶ 502.03[2][b][ii] (15th

Page 21 of 27
September 8, 2025

rev. ed. 2003))).  A claim filed in a bankruptcy proceeding will not be allowed if the same claim

would not be enforceable against the debtor outside of bankruptcy.  *See* 11 U.S.C. § 502(b)(1); *G-*

*I Holdings, Inc.*, 443 B.R. at 663 (citing *Combustion Engineering*, Inc., 391 F.3d at 245, n. 66).

The "running of a limitations period constitutes an affirmative defense, a defense that the debtor

is to assert after a creditor makes a claim."  *Midland Funding, LLC v. Johnson*, 581 U.S. 224, 230

(2017) (internal quotations omitted).

### 3.  The Bezzone Claims Are Time Barred

*New Jersey Statute Annotated* 2A:14-1 provides that every action at law for recovery upon

a contractual claim or liability, express or implied, "shall be commenced within 6 years next after

the cause of any such action shall have accrued."  As the Court will discuss, the same statute of

limitations applies to Bezzone's alternate claims of quantum meruit and unjust enrichment.  *See*

N.J.S.A. 2A:14-1.  To determine when a cause of action accrued, the relevant inquiry is when did

the party seeking to bring the action have an enforceable right.  *Metromedia Co. v. Hartz Mountain*

*Assocs.*, 139 N.J. 532, 535 (1995) (quoting *Andreaggi v. Relis*, 171 N.J. Super. 203, 235–36 (Ch.

Div. 1979)).  Under New Jersey law, a cause of action generally accrues when the right to "institute

and maintain a suit" first arises.  *Rosenau v. City of New Brunswick*, 51 N.J. 130, 137 (1968).  For

breach of contract claims, the cause of action typically accrues when the breach occurs, not when

the plaintiff discovers the breach or suffers damages.  *See Neuhart v. Tr. Co. of New Jersey,* No.

A-5856-06T2, 2008 WL 2415281, at *5 (N.J. Super. Ct. App. Div. June 17, 2008) (citing *Williston*

*on Contracts* § 79:14 at 303-04 (Lord ed. 4th ed. 2004)) ("It is axiomatic that a cause of action for

breach of contract accrues when the breach occurs.").

"[M]ere uncertainty as to the quantum of damages is an insufficient basis on which to deny

the non-breaching party relief."  *Totaro, Duffy, Cannova & Co., L.L.C. v. Lane, Middleton & Co.,*

Page 22 of 27
September 8, 2025

*L.L.C.*, 191 N.J. 1, 14 (2007).  Thus, calculations of damages need not be exact to enable a plaintiff

to bring an action before a court.  *Id*.  "Proof of damages need not be done with exactitude… It is

therefore sufficient that the plaintiff prove damages with such certainty as the nature of the case

may permit, laying a foundation which will enable the trier of the facts to make a fair and

reasonable estimate."  *Lane v. Oil Delivery Inc.,* 216 N.J. Super. 413, 420 (App. Div. 1987).  In

other words, plaintiffs must file suit when the breach occurs, not when they figure out the damages.

Here, it is undisputed that the March 2016 Term Sheet was drafted and circulated by Mr.

Bezzone in February 2016.  In March 2016, Frank Mustilli e-mailed the draft back to Mr. Bezzone

with revisions.  In October 2017, the Town of Harrison approved the RDA 1 Agreement.  It is

undisputed that the only compensation received by Bezzone was the $540,000.  The Parties dispute

whether there was ever a binding agreement.  However, this Court never has to get to that point

because the undisputed facts demonstrate the POCs are time-barred.

Bezzone's own pleadings establish when their cause of action accrued.  In the Superior

Court Complaint, Bezzone alleged that the approval of the redevelopment plan in October 2017

"by itself triggered an obligation by Supor to compensate Bezzone in the amount of $13,800,000

(10% of the appraised value)."  ECF No. 363-1, ¶ 55.  The Superior Court Complaint further states

that this compensation was "payable upon the approval of the Redevelopment Plan by the Town

[of Harrison]."  Case No. 24-13427, Claim 5-1, Part 2.  Bezzone reiterates the point in their

Response and Bezzone's Declaration.  ECF No. 395; ECF No. 395-3.  Bezzone's Statement of

Undisputed Facts admits "that the approval of the first Redevelopment Agreement triggered an

obligation by Supor to compensate Bezzone under their original agreement."  ECF No. 395-1, ¶

37.  The Town of Harrison approved the RDA 1 Agreement in October 2017.  ECF No. 363-6, ¶

36; ECF No. 395-1, ¶ 36.  From the beginning, Bezzone clearly acknowledges the approval of the

Page 23 of 27
September 8, 2025

RDA 1 Agreement as the triggering date, *i.e.*, the accrual date, for the causes of action against the

Debtors.

More recently, Bezzone attempted to change their position and argued their claims did not

accrue until after the Town of Harrison approved the RDA 2 Agreement in 2021.  ECF No. 395,

¶¶ 70-76.  However, this argument contradicts the State Court Complaint, along with Bezzone's

own admission and statements.  *See,* Case No. 24-13427, Claim 5-1, Part 2; ECF No. 395-1, ¶ 37;

ECF No. 395-3, ¶ 18.  Bezzone cannot backtrack simply because their previous position no longer

suits them.  Moreover, while the Court is not bound by the Superior Court's findings because the

Superior Court Action was ultimately, voluntarily dismissed, they are instructive to this Court.

Interestingly, Bezzone provided the First and Second Superior Court Orders as evidence upon

which they hoped this Court would rely, albeit to support another issue.  The First Superior Court

Order states that, "Plaintiffs contend that they are not estopped from asserting their contract claims,

as defendants argue, since the six-year statute of limitations has not run."  ECF No. 395-17.  The

Superior Court Complaint argued Bezzone's right to payment arose in October 2017 and failed to

make any mention to the RDA 2 Agreement as a triggering date.  *See,* Case No. 24-13427, Claim

5-1, Part 2.  Bezzone filed the Superior Court Complaint on July 13, 2021.  *Id.*  Clearly, the statute

of limitations had not expired.  The problem for Bezzone is they dismissed the Superior Court

Action and time passed, as it always does.  For whatever reason, likely because they remain unpaid,

Bezzone renewed their claim in the bankruptcy action.  But Bezzone cannot now disavow their

own pleadings to avoid the statute of limitations.  *See Berckeley Inv. Group, Ltd. v. Colkitt*, 455

F.3d 195, 211 n. 20 (3d Cir. 2006) ("[j]udicial admissions are concessions in pleadings or briefs

that bind the party who makes them").  While the statute of limitations had not run prior to the

Superior Court Action, it has now.

Page 24 of 27
September 8, 2025

Bezzone cannot use the six-year statute of limitations to defend themselves in the Superior Court Action and then disregard its import here.  Bezzone now, after several iterations previously saying otherwise, contends that their "entitlement to the $20,000,000[,] which makes up the bulk of [their] claim arose in 2021." ECF No. 395.  But Bezzone expressly and unequivocally tied this claim to the October 2017 RDA 1 Agreement approval and is therefore time-barred.  Case No. 24-13427, Claim 5-1, Part 2.

In an apparent last-ditch effort, Bezzone again changed their tune.  At the Summary Judgment Hearing, Bezzone argued: (1) the accrual date for purposes of statute of limitations was the date of the second appraisal, which was performed after the RDA 2 Agreement; and (2) a discussion between Mr. Supor and Mr. Bezzone created a new agreement that restarted the statute of limitations.

Bezzone asserted the statute of limitations began to run on the date of the second appraisal because that is when the alleged final amount of the damages could be calculated.  Not only does this argument contradict Bezzone's admissions and prior statements, it also has no merit.  As stated above, exact calculations of damages are not prerequisite to a plaintiff's relief.  The accrual date is the moment when the right to institute an action first arises, not the moment when quantification of the injury becomes certain.  In some cases, damages may continue to accrue long after the date of the initial injury.  It would be counterintuitive for the date of damages certain to be the accrual date because that date is not always fixed.  Bezzone's right to initiate an action began, as they have previously admitted, when Mr. Supor's alleged first obligation to compensate Bezzone occurred.  This date was after the approval of the RDA 1 Agreement, in October of 2017.

At the Summary Judgment Hearing, when the Court provided the car accident hypothetical, Bezzone argued that the date of the initial injury would not be the accrual date if a subsequent

Page 25 of 27
September 8, 2025

agreement was made.  However, the date of the car accident is the date the statute of limitations starts to run, albeit for a personal injury claim. Bezzone skips around the issue.  But it is commonplace for damages to grow after an initial breach or injury.  An accrual date is the starting point, not an ending point.  It is, however, the start date for the statute of limitations.  Bezzone argued the accrual date did not occur after the approval or appraisal of the RDA 1 Agreement because Mr. Supor made an agreement to pay Bezzone after the approval of the RDA 2 Agreement. The Court gives no credence to this argument, which was not alleged in Bezzone's pleadings and appears to be merely a last-ditch attempt to undo years of admissions to the contrary.  Furthermore, Bezzone's argument only supports a calculation of alleged damages—not the date the damage begun.

For determining the accrual date, it is irrelevant when the bulk of the claim arose, when the damages were quantified, or whether future oral agreements were made.  The critical date is when Bezzone first became entitled to sue for compensation under the March 2016 Term Sheet. Moreover, it is irrelevant if Bezzone is pursuing 10% of the later appraised value after the RDA 2 Agreement.  Bezzone's cause of action regarding the RDA 2 Agreement arises from a purported breach of an oral contract that was allegedly already breached.

Pursuant to the Superior Court Complaint and Bezzone's own pleadings and admissions, Bezzone's entitlement first arose on the approval of the RDA 1 Agreement in October 2017.  There is nothing in the record to sufficiently support any other date as the accrual date.  The Debtors filed their bankruptcy petition on April 2, 2024.  ECF No. 1.  More than six years passed between October 2017 to April 2024.  The Stipulation of Dismissal did not provide for a tolling of the statute of limitations.  And, while it was without prejudice, it never preserved Bezzone's rights to go back to the Superior Court to finish litigation from where it last ended.  Case No. 24-13427,

Page 26 of 27
September 8, 2025

Claim 5-1, Part 2.  Bezzone would have had to begin again.  For whatever reason, Bezzone decided to dismiss the Superior Court Action in 2023.  Bezzone must live with that result because they waited too long to revive their time-barred causes of action.  The fact that those time-barred causes of action were asserted in this case in a proof of claim does not change the outcome.  Accordingly, Bezzone's contractual claims are time-barred under New Jersey's six-year statute of limitations and must be disallowed pursuant to 11 U.S.C. § 502(b)(1).

This Court already stated that it does not need to decide whether a contract existed because the POCs are time barred.  However, the Court momentarily notes that Bezzone's other claims for recovery would also be time-barred.  In the Superior Court Complaint, Bezzone sought relief for conversion, unjust enrichment, and quantum meruit.  Case No. 24-13427, Claim 5-1, Part 2.  *New Jersey Statute Annotated* 2A:14-1 provides, in part:

> Every action at law for trespass to real property, for any tortious injury to real or personal property, for taking, detaining, or converting personal property, for replevin of goods or chattels, for any tortious injury to the rights of another not stated in N.J.S.2A:14-2 and N.J.S.2A:14-3, or for recovery upon a contractual claim or liability, express or implied, not under seal, or upon an account other than one which concerns the trade or merchandise between merchant and merchant, their factors, agents and servants, shall be commenced within six years next after the cause of any such action shall have accrued.

*N.J.S.A.* 2A:14-1.  Accordingly, all of Bezzone's bases for recovery are time-barred, as all rights to recovery accrued over six years ago.  *See Kissi v. Ansah*, Docket No. A-2040-21, 2024 WL 1845940 at *2 (N.J. Super. Apr. 29, 2024) (citing *Kopin v. Orange Prods., Inc.*, 297 N.J. Super. 353, 373–74 (App. Div. 1997) ("[t]he six-year limitation set forth in *N.J.S.A. 2A:14-1* is applicable to quasi-contract claims, including unjust enrichment and quantum meruit claims"); *see also Catena v. Raytheon Co.*, 447 N.J. Super. 43, 52 (App. Div. 2016) (stating fraud claims are additionally governed by the six-year statute of limitations set forth in *N.J.S.A.* 2A:14-1(a)).

Page 27 of 27
September 8, 2025

The Debtors have carried their burden and sufficiently shown that the statute of limitations has run on the causes of action underlying the POCs.  Relying on the undisputed facts in this case, coupled with Bezzone's own admissions, the Court finds the POCs are time-barred and thereby unenforceable against the Debtors pursuant to 11 U.S.C. § 502(b)(1).  The Debtors are therefore entitled to judgment as a matter of law.  The POCs must be disallowed, and the Motion for Summary Judgment is granted.  The Court is aware that this is a harsh result in the face of the alleged damages.  However, the law permits no other outcome.

## IV.  <u>CONCLUSION</u>

The Motion is **GRANTED**.  An appropriate order will be entered by the Court.  Claims 5-1, 4-1, 4-1, 2-1, and 2-1 in cases 24-13427, 24-13428, 24-13429, 24-13433, and 24-13434, respectively, are disallowed and expunged in their entirety.

Very truly yours,

**DATED: September 8, 2025**

Honorable Stacey L. Meisel
United States Bankruptcy Judge